# WILLIAM M. RUSK v. W. W. WEST et ux., Appellants.

### In Banc, November 30, 1921.

1. **QUIETING TITLE: No Title in Plaintiff: Possession by Defend-
ant.** · In a suit to quiet title a judgment cannot be rendered in be-
half of a plaintiff who shows no paper title and has never at any
time been in possession; but as between him and a defendant in
possession who shows no paper title, the defendant has the better
title and judgment should be for him.

2. ————: **Title By Limitations: Land Not Claimed.** Where the claim-
ant to land brought suit to quiet title, basing his title on ten
years' adverse possession, and describing the land claimed as south
and west of a certain creek, he acquired no title to seven acres lying
north of said creek, and a decree which did not describe the land
north of the creek did not vest him with the paper title; and the
fact that other persons were in possession at the time he brought
suit and had been for years indicates that he did not claim said
seven acres.

3. ——.—: **Boundaries: Adverse Possession.** Where the owner of a
twelve-acre tract claimed to own an adjoining seven-acre tract,
took possession of it, fenced it, cultivated it herself or collected
the rents from tenants, and its boundary was marked by a creek,
which was recognized by an established survey as the boundary,
and there was no dispute about the boundary, and she held such
possession for thirteen years, her conduct shows a claim of title
and that there was no misapprehension as to the true line; and it
is immaterial whether she thought the seven acres a part of her
twelve acres or not, if she in fact claimed title to the seven-acre
tract.

4. ——: ————: **Law Case: Findings of Court: Contrary to Evi-
dence.** Where the trial court in an action at law to try title, upon
motion of defendant made a finding of facts, to the effect that there
was no adverse possession by defendant or those under whom he
claims, and that finding does not discredit the witnesses, but
overlooks written documents and the force of its own findings,
the judgment will be reversed, as not sustained by the evidence.

5. ——: ——.—: ————: **Claim of Ownership.** Where lands were
sold in partition in 1879, and among other lands, twelve acres in the
south forty of an eighty was set apart to the widow, and seven
200 Mo.—28

acres in the north forty, separated from the twelve-acre tract by a creek, was sold, but not described in any of the deeds conveying the balance of intestate's lands so sold, and she took possession of the seven-acre tract, fenced it, cleared it where clearing was needed, and farmed or rented it for nearly forty years, the boundary line between it and the twelve-acre tract being shown by established surveys, and every act of hers was an act of an owner, which the witnesses say she all the time claimed to be, and further say that she was claiming title, not to a mere supposed, but to a known and acknowledged, true line, the purchaser of her interest is the true owner, and the finding of the trial court that her long possession was not under claim of title or ownership is not sustained by the evidence; for, the title having once ripened in her, others who claim through deeds from other co-parceners acquired no title.

Appeal from Boone Circuit Court.—*Hon. David H. Harris,* Judge.

REVERSED AND REMANDED.

*Harris & Price* for appellants.

(1) Plaintiff must prove his case, that is, that he has fee simple title, and having admittedly no possession he must prove a record title. Until plaintiff shows a fee simple title prima-facie, he cannot complain of weakness of defendant's title. Wheeler v. Land Co., 193 Mo. 279; Stewart v. Lead Co., 200 Mo. 281; Gardner v. Robinson, 208 Mo. 605; 32 Cyc. 1372; 5 R. C. L. p. 675. (2) Plaintiff's proof does not establish any record title to the tract in dispute, nor any other valid claim. (3) Defendants and plaintiff and their predecessors were not adjoining proprietors and this is therefore not the ordinary case of a mutually mistaken boundary line. (4) Defendants' possession for forty years ripened into an absolute title, and the adverse character of the possession is not affected by the absence of dispute or question as to the boundary, nor by the absence of verbal declarations of ownership, the law presuming an adverse holding where there is no evidence to the contrary.

Brummell v. Harris, 148 Mo. 443; 1 R. C. L. pp. 686, 707. (5) Possession even though having its inception in a mistake may nevertheless be adverse, if the possessor treats the land as his own and asserts exclusive dominion over it. Hamilton v. West, 63 Mo. 93; Cole v. Parker, 70 Mo. 372; Mather v. Walsh, 107 Mo. 231; Milligan v. Fritts, 226 Mo. 197.

*Ralph T. Finley* for respondent.

(1) The evidence shows a record title in plaintiff. (a) In suits to try title under Section 2535, it is not necessary for plaintiff to show title against the whole world from a common source, but it is sufficient that he show a better title from a common source, than defendant. Graton v. Land Co., 189 Mo. 322; Dixon v. Hunter, 204 Mo. 382; Williams v. Sands, 251 Mo. 147. (b) Throughout the trial it was conceded that the plaintiff was the adjoining owner. The only issue made by defendant was as to his claim of title by adverse possession, as against plaintiff and his grantors. Under such conditions the court was justified in decreeing title in the plaintiff. January v. Harrison, 199 S. W. 937. (c) The description in the sheriff's deed to W. F. March and in the deed from F. M. Gordon to Rector are sufficient to support the decree of title as against the defendant, when taken in connection with the other deeds in the chain of title and with the situation of the parties and parol testimony. Hammond v. Johnston, 93 Mo. 198; 18 C. J. 280, sec. 249. (d) If the description in any of plaintiff's deeds, particularly in the deed from F. M. Gordon to Rector (Conveyance 6) is defective, the court had power to vest title in the plaintiff, under the general prayer of the petition. Trigg v. Trigg, 192 S. W. 1015. (e) The description in the petition in the Fowler partition suit being in the wrong range, and the sheriff's deed to W. F. March containing a vague description, the suits to perfect title, conveyances 12, 26 and 27, describing all of the east half of the northeast quarter

lying north and south of Silvers Fork Creek, effectually perfected the title, such suits being in strict conformity to the statute. R. S. 1909, secs. 1776, 2535; Funsch v. Stevenson, 223 S. W. 593. (f) The decrees to perfect title, based on orders of publication against unknown parties, are as binding upon defendants as in the case of other judgments and cannot be collaterally attacked. Shemwell v. Betts, 264 Mo. 270; Hambel v. Lowry, 264 Mo. 181; Downing v. Anders, 202 S. W. 299; Abington v. Townsend, 271 Mo. 614-617. (2) The defendant's evidence was insufficient to show title by adverse possession. (a) In a suit to try title, wherein no equitable issues are involved, the finding of facts by a court sitting as a jury is conclusive on appeal. Dowd v. Bond, 199 S. W. 954; Chilton v. Nickey, 261 Mo. 242; St. Louis Union Trust Co. v. Hill, 223 S. W. 434. (b) There is no presumption of hostility or claim from mere possession. Davis v. Alexander, 183 S. W. 563; Corrigan v. Early, 183 S. W. 575; Ware v. Cheek, 201 S. W. 848. (c) The possession of Susan P. Reid, who entered possession of her land adjoining that of her brother, immediately following the partition suit, if she really was in possession of the tract in dispute, was evidently of a friendly nature, and there is nothing in the record to show a change in its character. (d) Both Susan P. Reid and W. F. March have made deeds to the tract in question, as late as 1899, to parties under whom the plaintiff claims, in which they expressly deeded all of the land lying south of Silvers Fork Creek, except the twelve acres set off to Susan P. Reid. Such deeds distinctly negative a claim of title, and possession of defendant and his grantors cannot be adverse without a change in the character of the possession after the making of such deeds. 2 C. J. 143, 144; Norton v. Kowazek, 193 S. W. 560; Real Estate Co. v. Keleher, 214 S. W. 961; Rottink v. Nagle, 275 Mo. 200; In re 37th St. in K. C., 195 S. W. 554. (e) The burden was on defendant to show that his possession and that of his grantors was adverse, even though the plaintiff should admit or the

court find that defendant and his grantors have been in possession for many years. Spicer v. Spicer, 249 Mo. 596.

GRAVES, J.—Suit to quiet title to forty acres of land in Boone County. Petition is in ordinary form. Defendants are husband and wife. The land to which plaintiff avers that he is the owner in fee is the northeast quarter of the northeast quarter of Section 14, Township 50, of Range 13. Defendant W. W. West alone answered. His answer is (1) that ''he has full and complete title by limitations to 7.07 acres off of the southeast corner of the northeast quarter of the northeast quarter of Section 14, in Township 50 of Range 13, in Boone County, Missouri, said land being more particularly described by Survey Number 5854, which appears of record in Book J at page 63 of the Survey Records of Boone County, Missouri, and is in possession thereof;'' (2) that plaintiff had full knowledge of defendant's title, and when and how he acquired it, and of its exact nature and character, and (3) that the said defendant is the owner in fee simple of the said 7.07 acres of land above described, and that the defendant and those under whom he claims have been in the open, notorious, exclusive and continuous possession of the same, claiming to be the owner thereof, for more than ten years last past before the institution of plaintiff's suit herein. He then asks that title be determined, and the title to this small tract of 7.07 acres be decreed to be in him.

The reply had better speak for itself, and reads:

''Now comes the plaintiff and for his reply to defendant's amended answer herein denies each and every allegation therein contained.

''And further replying, the plaintiff states that he claims title to the real estate described in the petition and amended answer herein under one William M. Oliver, by mesne conveyances from said Oliver; that on or about November 26, 1912, said William M. Oliver filed suit in

the Circuit Court of Boone County, Missouri, to try, ascertain and determine the title to said real estate, which suit is entitled William M. Oliver, Plaintiff, against The Unknown Heirs, Devisees, Consorts and Alienees of John McDonald, Deceased, And Others, and in which suit said land, with other land, was particularly described; that the defendants in said suit embraced all persons under whom the defendant claims or might claim title to said real estate, and their unknown heirs, devisees, consorts and alienees, and that the defendant herein was in truth and in fact, as well as law, a party defendant to said suit; that service was duly obtained on said defendants in said action by publication; that thereafter, on March 14, 1914, at the January term, 1914, of said court, said cause was duly and regularly heard by said court, and a decree declaring and perfecting the title to said real estate in said William M. Oliver was duly rendered and entered by said court, which decree is final and binding on all parties concerned, including the defendant herein.

"And further replying the plaintiff states that on January 11, 1913, after the institution of said suit, he acquired the title of said William M. Oliver and has since been and is the owner in fee simple of said land; that the defendant had actual knowledge of the pendency of said suit, as well as constructive knowledge thereof, and has actual knowledge of the rendition of said decree at or about the time the same was rendered and never filed any action in said court to review the same, and same has now become final and absolute by virtue of the statute in such cases made and provided, by reason of which facts the defendant is estopped to set up any defense herein against the title of the plaintiff to said land, and said former suit has finally settled, adjudicated and determined the title to said real estate.

"Wherefore, having fully replied, the plaintiff prays judgment in accordance with the prayer of his petition."

Jury was waived and upon trial before the court, a judgment was entered decreeing title in plaintiff for all

the land in the petition described, and defendant has appealed.

I.   Of the knotty little problems, the instant case is one, but when boiled down the issues are really but two. Remembering that it is a law case pure and simple, under the pleadings, the findings of the trial judge upon the questions of fact, if supported by substantial evidence, must stand. Neither the plaintiff nor his predecessors in title (if he has title) have been in possession of this tract of seven acres involved herein. By this we mean, since the death of the man who is the admitted common source of title. This admitted common source of title is Joseph S. Fowler, who died in about 1878. The two real questions are: (1) in view of the fact that neither plaintiff nor his immediate grantors have ever been in the possession of this land, did plaintiff make out a paper title thereto, and (2) if he has made out such paper title, has defendant shown title by adverse possession. The trial court found against the defendant on his claim under a rather peculiar finding of facts. The court also found for plaintiff presumably on a paper title from the common source. Appellant contends that neither finding is supported by the evidence. For convenience of the discussion we set out the full findings made by the trial court, thus:

*Additional Facts.*

"This cause having been submitted to the court (sitting as a jury) and the court having heard the evidence adduced and the argument of counsel and being fully advised in the premises, having announced its conclusion, at the request of the defendant doth make a finding of facts as found by the court, which is ordered filed, to-wit:

"That one Joseph S. Fowler, deceased, is a common source of title to the seven-acre tract of land in controversy; that said Joseph S. Fowler died seized and possessed of a considerable body of real estate situated in Boone County, Missouri, including the northeast quarter of the northeast quarter of Section 14, Township 50,

Range 13; that about the year 1878, partition proceedings were instituted in the Circuit Court of Boone County by the widow Susan P. Fowler and the heirs for the partition of said lands of the said Joseph S. Fowler, deceased; that in said partition proceedings, commissioners were appointed by said court to set off to the said Susan P. Fowler in fee her dower rights in said lands of the deceased, and that said commissioners did set off to the said Susan P. Fowler certain described lands, including a twelve-acre tract described as the east part of the southeast quarter of the northeast quarter, Section 14, Township 50, Range 13; that the balance of the lands included in said partition proceedings and not set off to said Susan P. Fowler were sold in said partition proceedings by the sheriff of Boone County, Missouri; that the said seven-acre tract now in controversy lies immediately north of the north line of the twelve-acre tract above described, and south and east of a bend of Silvers Fork Creek as the same ran in 1878; that a part of the lands so set off to the said Susan P. Fowler was situated immediately east of the said seven-acre tract of land now in dispute and adjoining the same; that said Susan P. Fowler afterwards intermarried with one Reid and became known as Susan P. Reid; that immediately after said lands had been set off to her by the commissioners as aforesaid, the said Susan P. Fowler, or Susan P. Reid, entered into possession of the lands so set apart to her, and also at that time or soon thereafterward entered into possession of the seven-acre tract now in controversy and up to the line of said creek as same ran in 1878; that said creek at that time formed a natural and convenient boundary on the north and west side of the tract or parcel of ground now in controversy; that the said Susan P. Fowler, or Susan P. Reid, or someone for her, enclosed said seven-acre tract by building a fence of some kind along the south and east banks of said creek, and thus connecting and enclosing said seven-acre tract with the lands set off to her by the commissioners; that said Susan P. Fowler or Susan P.

Reid cleared the timber from said seven-acre tract and cultivated same, and that she and those claiming under her have since been in the open and continuous possession of said land, cultivating and using the same in connection with the land set off to her in said partition proceeding; that the balance of the lands belonging to the said Joseph S. Fowler and included in said partition proceedings, and not set off to the widow, Susan P. Fowler, was sold in said partition proceedings by the sheriff of Boone County, Missouri; that the description in said partition proceedings are irregular and defective, but the court finds that said descriptions were corrected by later deeds, and that subsequently one William F. March became the record owner of all the land formerly owned by Joseph S. Fowler, deceased, in said Section 14, including the seven-acre tract now in controversy and described in plaintiff's petition and in defendant's answer herein, except the lands set off to the widow, Susan P. Fowler; that in 19—, said W. F. March acquired the title of Susan P. Reid, subject to her life estate, to all the lands in Section 14 to which the said Susan P. Reid had the record title, and that he continued in possession of same, including the seven-acre tract now in controversy, until his death in 1917, when his heirs brought a partition suit and had the land sold thereunder; that at said partition sale, the defendant, W. W. West, became the purchaser and went into the possession of said lands, including the seven-acre tract now in controversy, and is now in possession of same; that the seven-acre tract now in controversy was not described and included in the petition filed in said March partition suit, nor is said seven-acre tract described or included in the sheriff's deed to the defendant West under the order of sale in said partition proceedings.

The court further finds from all the facts and circumstances in evidence that, although Susan P. Reid remained in possession of the seven-acre tract now in controversy for approximately 40 years and until the date of her death about three years ago (the exact date

not being shown by the evidence), her possession was not under claim of title; that during all that period of time, so far as shown by the evidence, no question ever arose regarding the boundary line between the lands of the said Susan P. Reid and the adjoining landowner on her north and west, and that so far as appears from the evidence the question of the boundary line was never considered or discussed between said Susan P. Reid and her adjoining neighbor and landowner on the north of the tract now in controversy; that the defendant claims title through the said William F. March, who purchased the twelve-acre tract from Susan P. Reid in the year 1899, subject to the life estate of said Susan P. Reid therein, but that in none of the deeds conveying said twelve-acre tract was the seven-acre tract ever described or mentioned; that, on the contrary, in the year 1898, just prior to the purchase by him of the remainder interest in said twelve-acre tract, the said W. F. March conveyed the land lying immediately north of and adjoining said twelve-acre tract and expressly reciting in his deed that he intended to convey all of the land formerly owned by Joseph S. Fowler in Section 14, Township 50, Range 13, except the twelve-acre tract set off by the commissioners to Susan P. Fowler.

"The court further finds that no question ever arose regarding the boundary of said land and the ownership of the seven-acre tract now in controversy until plaintiff purchased and attempted to enter into possession thereof shortly prior to the death of Susan P. Reid and less than ten years prior to the institution of this suit.

"The court further finds that defendant and those under whom he claims title by possession have never paid any taxes on said land, and that whatever taxes have been paid on said lands or any part thereof during the past ten years have been paid by plaintiff and those by and through whom he claims title.

"The court further finds that plaintiff is the record owner of the title to the said seven-acre tract in controversy from the common source, and has the better

title from said common source, and that the possession of said Susan P. Reid of the land in controversy was not adverse to the plaintiff and those under whom he claims, and that defendant has not acquired title to the land in controversy by adverse possession.''

It will be noted that the land in question is in the east half of the northeast quarter of Section 14, Township 50, Range 13. In 1831 a 23.33-acre tract was surveyed out of this 80-acre tract. It was and is known as Survey No. 335. This survey began at the northeast corner of the 80-acre tract. It ran south on the east line of the land for a short distance of 8 chains and 50 links, to the then north bank of Howard's fork of Perche Creek. It then ran down the stream, following the meanderings of the said north bank, and the calls in the survey ultimately get back to the place of beginning. The plat reproduced on page 444 will give an idea.

There are five tracts within this 80 acres much mentioned in the evidence, and for convenience we have numbered them from one to five. No. 2 is old Survey No. 335. The straight lines mark the creek bank in 1831. There was a survey, No. 3854, made in 1918 to get the boundaries of the tract of land in dispute, which is No. 5 on the plat as we have added the numbers. The dotted line represents the old bed of the creek, as it appeared to the surveyor in making survey No. 3854. In about 1893 the creek shifted so that No. 5, the land in dispute, was left on the north side of the creek, rather than south and east of it, as in 1831. In 1893 the creek was practically between tracts 1 and 5, as they appear upon this plat.

Counsel for plaintiff present a plat, reproduced on page 445, which shows the situation of what they denominate as plaintiff's lands.

At this point in the facts, it should be well to state that when Joseph S. Fowler died he left a widow, whose name was Susan P. Fowler. Partition of the estate was had, and the widow, Susan P., was allowed as her own the lands shown on the plat of respondent as 12 acres

Rusk v. West.

Rusk v. West.

Plaintiff's Exhibit "A"

in S. E. of S. E. of Section 14, and 31.96 acres west half of northwest of Section 13 and others lands. Susan P. Fowler married Lysander Reid, and therefore the name Susan P. Reid on this plat. In the division of Fowler estate this seven-acre tract was not set off to Mrs. Fowler, later Mrs. Reid, but she took possession of it in connection with the twelve-acre tract and the other lands in Section 13, which were set off to her. This was in 1879. The seven acres was to the north of her twelve acres, and to the west of her 31.96 acres. The seven acres was then south and east of the creek, whereas now it is north of it. These will suffice for the facts for the present.

II.   It is clear from the findings *nisi* that plaintiff was not entitled to the decree, unless he has shown a paper title to the land in dispute.  He has never been in possession, and was not at the time of the decree.  From Fowler's time to this suit no one in plaintiff's line of title had ever been in possession of the land in dispute, unless it be W. F. March, and of this we speak later. · The reply indicates that plaintiff rests his paper title largely on a suit to quiet title brought by one William M. Oliver in November, 1912.  This suit was against "the unknown heirs, devisees, consorts and alienees of Joseph S. Fowler, deceased," among other defendants.  The decree in that case, entered in March, 1913, vest title in William M. Oliver to the following lands, to-wit:

Plaintiff's Title.

"Eighty acres, the west half of the northeast quarter, and thirty acres, more or less, being all that part of the east half of the northeast quarter lying south and west of Silvers Fork Creek, except twelve acres, more or less, formerly owned by Susan P. Reid, described as follows: Commencing at the southeast corner of the northeast quarter, thence west 24 rods, thence north 80 rods, thence east 24 rods, thence south 80 rods to the beginning, all in Section 14, Township 50, Range 13."

The eighty acres above described has nothing to do with this case.  At the time this suit was brought the evidence in this record shows the seven-acre tract to be north of the then creek.  The creek was practically on the north line of the twelve-acre tract at the institution of this suit.  Oliver in his petition based his claim of title on adverse possession, for ten years, not otherwise.  The question is what land was in fact covered by this decree, conceding that the decree is valid for present purposes. The question is, does the decree of 1913, in favor of Oliver, cover the seven-acre tract, which under all the evidence in the record was not on the south, but on the north side of the creek long prior to the institution of the suit, and at the time of the institution of the suit?  By this action Oliver was attempting to establish a record

title, instead of a mere possessory title, under the ten-year Statute of Limitations. His petition was based on adverse possession for ten years, and not otherwise. When he asked for a decree of title to the 30 acres he averred that it was south and west of the creek in question. The land in dispute was at this time (1912 and 1913) not south of the creek. In determining what land is covered by this decree, we must take the creek as it was when Oliver brought his suit, for he said nothing in his petition about land south and west of the former bed of the creek. This decree of 1913, under all the evidence, did not cover the land in dispute. Rusk, the plaintiff, who bought in 1913, testified that "the creek was approximately on the north line of the S. E. ¼ of the N. E. ¼ of Section 14." The other testimony in the case places this change in the creek at about 1893. All the other testimony shows that neither Oliver nor any of the parties before him in his line of title had ever been in possession of the seven-acre tract, and he avers that he and his grantors had been in possession of the 30 acres (more or less) for more than ten years. So that when we locate the creek at the filing of Oliver's petition, and at the date of his decree, it is clear that this seven-acre tract, now in dispute, was not involved in that law suit. Another circumstance is that Mrs. Reid lived until 1917, and either she or her brother's children (W. F. March's children) were in the possession of the seven acres, and the suit was by publication, when their occupancy was known both by Oliver and all of his predecessors. This only goes to show that his suit was not intended to cover the seven-acres. This is really immaterial, however, for as a fact it did not so cover, and that is sufficient. This takes out of the case this suit to quiet title and the decree therein.

There are two other decrees vesting title, in the chain of title, being Nos. 26 and 27. No. 26 is the only one which could bind Mrs. Reid, formerly Fowler, or any Fowler connections. This decree was in October, 1903. This suit was brought in May, 1916; so that even if it

covered the land in dispute (which we do not think it does) yet the alleged adverse possession of the seven-acre tract was continued up to the very institution of this suit, a period of fifteen years. We therefore exclude this decree from our consideration.

III. Counsel urges that the trial court's findings of fact on the matter of adverse possession is not sustained by the evidence. In this we think they are correct. We have eliminated the several decrees in the suits to quiet title, for our own disposition of the case. The trial court does not seem to have seriously considered the suits to quiet title. The findings and judgment are not predicated thereon. These findings indicate that the trial court tried to make out a paper title in the plaintiff (a boundless task under the conveyances) and the absence of adverse possession in defendant and his grantors.

*Finding Contrary to Evidence.*

A few additional outstanding facts should be stated. Joseph S. Fowler had no children, and this accounts for the fact that the widow, Susan P., got half the lands. W. F. March, who bought at the Fowler partition sale, was a brother of the widow, Susan P. (Fowler) Reid, who died in 1917, without any children. The widow of W. R. March testified at the trial in July, 1919, and says her husband died seventeen years previous to the trial of the case. In the findings of facts at one place it is said that March died in 1917. The trial court finds that the widow Susan P. Reid, *nee* Fowler, was in possession approximately forty years. In 1898, Mrs. Reid deeded to W. F. March the lands that she asquired from the Fowler estate by practically the same description, and this deed makes no mention of the seven-acre tract. This deed contained this express condition:

"The said Susan P. Reid reserves the right to possession and control of said above described land as long as she lives and at her death the title is to go to W. F. March."

It thus created an estate for life in Susan P. Reid, and an estate in remainder in W. F. March. March never lived to see the life estate and possession of Mrs. Reid terminated. We mention this to show that Mrs. Reid was clinging to the possession of whatever she had. The plaintiff testified that when he bought his land, young Reid was farming this seven-acre tract in question, and that he was told that he was renting it from Susan P. Reid. Upon Mrs. Reid's death in 1917 the heirs of W. F. March took possession and had it at the time of the partition of the land as the property of W. F. March, deceased, at which partition, defendant was the purchaser, and he went into the possession of the seven-acre tract along with the other lands specifically named in his deed. His possession continued until this suit.

From the time that Mrs. Reid took possession, and fenced this land in 1879, no person, save her, has ever claimed it, until this plaintiff lodged his claim shortly before this suit. There were divers successive owners to old Survey No. 335 (which was never owned by Fowler) and they lodged no claim to it. One witness said that there were two fences along this old channel of the creek, one put there by Mrs. Reid on her side of the creek, and one by owners of old Survey 335, the land to the north and west of the seven acres. It is expressly shown in the evidence by one witness that Mrs. Reid claimed this land as her own, and not as a part of her twelve acres. It is further shown by the son of the R. P. Reid, who purchased the land north of the creek, that his father never claimed any land south of the creek. R. P. Reid purchased Survey No. 335, the 23-acre tract, in 1876, and the 14-acre tract in 1883. That is to say, he got tracts 2 and 3 as we have marked them on the plat put in evidence by defendant. This witness further testifies that there was a fence on the north side of the creek where the banks were not steep enough to make a fence. R. P. Reid's heirs parted with the R. P. Reid title and possession in 1892. No successor of R. P. Reid or his heirs ever claimed the seven

290 Mo.—29

acres, until plaintiff appeared on the scene. It is really Tract No. 5 on the plat, which is old Survey No. 335, which formed the north and west boundaries of the seven-acre tract. This tract was in the possession of R. P. Reid from 1876 to the date of his death, and until parted with by his heirs in 1892. There is no question that Mrs. Reid took possession and fenced the seven-acre tract in 1879, and cleared it up and put it into cultivation. The son said that R. P. Reid never claimed further than the north bank of the creek. So from 1879 to 1892, or for more than ten-years there was no doubt about dividing lines. So when Mrs. Reid fenced and took possession of the seven-acre tract the creek was not merely a convenient line between adjoining lands, as stated in the findings of fact, but it was the surveyed line of Survey 335, and a legally fixed line. The line was not an unknown division line, but the creek was the known, and legally established line, between old Survey No. 335, and this tract of seven acres. This is not a case where two adjoining proprietors were uncertain about the true line, and each cultivated up to a given line, thinking that it was the true line, but intending to claim to the true line. This is a case where R. P. Reid purchased under a deed this survey, No. 335, of 23.33 acres, and where the survey fixed the creek as the boundary line, which boundary line at the creek he recognized for eleven years after Mrs. Reid took possession of the seven-acre tract. This period alone would ripen her title by adverse possession, and once ripened that title followed her to the day of her death, when by virtue of her deed to W. F. March, it went to the March heirs.

Nor does the evidence in this case justify the finding of the trial court from other angles of the evidence. W. F. March was the purchaser at the Joseph S. Fowler partition sale. Whether he got title to this seven acres was a question, but an immaterial one, for the purposes of the instant matter of title by limitations. March got his title in 1879. Mrs. Reid took possession in 1879. March held title until 1883, or a little over three years.

He never questioned the claim of Mrs. Reid to the seven acres. March conveyed to Lysander H. Reid in January, 1883, and he held title to March, 1892, or a little over nine years. No question of Mrs. Reid's possession and claim during this period. It is true that Lysander Reid was the husband, but during all this time the witnesses say that Mrs. Reid was farming or renting the seven acres. In 1892 March again got title from Lysander Reid and kept it to February, 1899, and during all this time Mrs. Reid was in possession of this seven acres, treating it as her own. The fact is, that down through all the grantors in this line of title, there has been no claim to this seven acres by anyone, until the present action. We mention this line of the testimony, not because we think it very material upon the issues of title in Mrs. Reid by adverse possession, but to get the whole surroundings. It is not material, because the only boundary lines of this seven-acre tract is old Survey No. 335 on the north and west, and the twelve-acre tract on the south, and Mrs. Reid's other land upon the east. It is upon the theory of an unknown boundary line that the trial court went astray in holding that there was not title by adverse possession. This case differs from St. Louis Union Trust Co. v. Hill, 283 Mo. 278, 223 S. W. 434, because here we have a finding of facts by the court, upon motion of defendant. The court by these findings does not discredit the witnesses, but overlooks written documents, and the force of his own findings. The title by adverse possession ripened in Mrs. Reid, if at all, prior to any of the alleged deeds of correction. The first of these was in March, 1892, and Mrs. Reid had been in possession since 1879, or some thirteen years. True she signed this deed, but she did so as the wife of Lysander, and not as conveying her own property so far as appears in this record. As said, however, on the question of the ripening of the title in Susan P. Reid, the real questions are (1) the boundaries of this tract, (2) the character of her conduct showing claim of title, and (3) whether there was in fact any misapprehension as to the true line. The latter we

have answered, supra. As between R. P. Reid and Mrs. Susan Reid there was no misapprehension as to the true line both on the north and the west of the seven-acre tract. R. P. Reid only claimed the old creek bank as the true line, and it was in fact and law the true line. The survey in evidence so showed it. The first question as to the boundaries has been answered, supra, so that the only remaining question is the character of her claim as shown by the evidence and the findings of fact. This we take next.

IV. As to the acts of Susan P. Reid, so far as shown by the evidence, they all point to a claim of title in the seven acres. It is immaterial whether she thought it a part of her twelve acres or not, if she in fact claimed title. [Milligan v. Fritts, 226 Mo. 1. c. 197.] The record evidence does not show that she thought it part of the twelve acres. What is shown would indicate that she knew it was not a part of the twelve-acre tract. Her twelve-acre tract was marked off by the commissioner in the south forty of the eighty, and the seven-acre tract is clearly in the north forty. It suffices to say that she took possession of it in 1879, fenced it, cleared it, where clearing was needed, and farmed it, or rented it, up to the very day of her death. The court's findings so state. Every act shown by the evidence is an act of an owner, which the witnesses say she all the time claimed to be. The boundary lines upon each of the four dimensions, were known, and not unknown. She was not claiming title to a mere supposed true line, but to a fixed and acknowledged true line. There is nothing in the evidence to support the findings of the trial court to the effect that her long possession was not under the claim of title. So far as the evidence goes, it is to the effect that Mrs. Reid "claimed" the land. The witnesses do not use the word "title," but their language means as much. But the strongest of all the facts is that none of the divers owners (during all these years) of the surrounding lands ever claimed any title to this tract. This comes from all who spoke upon the question, and

is denied by none.  For forty years her claim to the land
was never questioned by the adjoining owners.   There
is no substantial evidence in this record tending to show
that the title, to this tract by limitations, had not ripened
in Mrs. Reid by the year 1890, at least.   Once it ripened
in her it continued.   The plaintiff could not have a title
in the face of this title, although his deeds may run
regular, a matter of grave dispute.

When Mrs. Reid died, at least an interest in it passed
to the heirs of her brother, W. F. March.  This, on the
theory that her deed to March for an estate in remainder
did not specifically cover the seven acres.   The heirs
went into possession in 1917, and after the partition of
the W. F. March lands in 1918, the present defendant,
the purchaser at that sale, took and held the same lands
that Mrs. Reid had held from 1879, including this seven
acres.   Measuring the acts of Mrs. Reid by the rules
governing cases of title by adverse possession, such acts
meet the requirements of the most stringent rules.   These
acts *are found by the court.*

The *quantum* and character of proof required in
cases where one co-tenant claims adversely to the others
is greater than in any other claims of adverse possession.
[Allen v. Morris, 244 Mo. 357; Nickey v. Leader, 235
Mo. l. c. 43 et seq.]   The proof in this case even meas-
ured up to the stringent rule in cases of a co-tenant claim-
ing adversely to the other co-tenants.

The first alleged deed of correction was made in
1892, but Mrs. Reid's acts and conduct toward this land
continued as before, and so continued until 1917 when
she died.   There was no substantial proof to sustain the
trial court's ruling to the effect that Mrs. Reid had not
acquired this title by adverse possession.. This, from
the finding of facts made, when construed in the light
of the written documents.  She was in possession when
plaintiff bought, and continued for four years, or until
her death.   Even plaintiff did not attack her possession
in her lifetime.  We have ignored the alleged paper title
claimed by plaintiff, because if Mrs. Reid acquired the

title by adverse possession as early as 1890, which she did, that title breaks, even in the face of a perfect chain of record title. A casual examination leads us to seriously doubt the alleged perfect chain of a paper title in plaintiff, but this alleged title we shall not further discuss.

V.    Just where the exact legal title to the seven acres is at this time may be a question. W. F. March was a brother of Mrs. Reid. When Mrs. Reid died in 1917, the title to the seven acres was in her, as was the possession up to, and prior to her death. Mrs. Reid had no children, nor did she have a husband, so far as the record runs. March's heirs would at least have some legal interest in the seven acres, in addition to mere possession, and held such possession until the partition sale of the W. F. March lands, at which sale the defendant was the purchaser, and defendant took the possession theretofore held by the March heirs and Mrs. Reid. These heirs or some of them testified in his behalf. Defendant has succeeded to the possession of the March heirs, and they had and held the possession of Mrs. Reid. Plaintiff has never been in possession. Under the facts appearing in this record, the judgment for plaintiff cannot be sustained, because there are no substantial facts sustaining it. As between the two, the defendant having the possession had the better title, and the judgment should have been for him as against plaintiff.

*Possessory Right.*

The judgment is therefore reversed, and the cause remanded to be disposed of in accordance with the views expressed herein. All concur, except *James T. Blair, C. J.*, who dissents.