BENJAMIN F. MANN ET AL. v. HATTIE A. MANN ET AL., Appellants.— No. 39074.—183 S. W. (2d) 557.

Division Two, November 13, 1944.

620

*W. S. Gabriel, Arthur B. Taylor* and *Walter A. Raymond* for appellants.

*John F. Thice, Reginald A. Smith* and *Mosman, Rogers, Bell & Conrad* for respondents.

TIPTON, J.—This action was filed in the circuit court of Jackson County at Independence, Missouri, to partition four tracts of land situated in Jackson County. At the trial there was a stipulation that the first three tracts of land were subject to partition, but the appellants contended they and their predecessor, Orange L. Mann, had acquired title to the west thirteen and a fraction acres of tract four by adverse possession. The jury sustained the appellants' contention. Respondents' motion for a new trial was sustained on the ground that the court erred in refusing respondents' requests for a directed verdict in the nature of a demurrer to appellants' evidence on the issue of adverse possession.

The common source of title to tract four was Benjamin F. Mann, Senior. He died intestate on October 17, 1913. His only heirs at law were his six children, whose names were as follows: Agatha J. Stewart, Orange L. Mann, Richard Lee Mann, Benjamin F. Mann, Jr., Minnie Mann Long, and Rosa Bokamper.

Tract four is a body of Missouri River bottom land containing thirty-seven and one-half acres. There are no improvements on any part of the land and no fences, either around it or across it.

In ruling on the respondents' motions for a directed verdict on appellants' contention that they had title to the thirteen and a fraction acres by adverse possession, the appellants are entitled to have the most favorable evidence taken as true, and, also, the most favorable inference that can be drawn therefrom. Smith v. Kansas City Public Service Co., 328 Mo. 979, 43 S. W. (2d) 548.

From the evidence most favorable, we find that almost immediately after the death of Benjamin F. Mann, Sr., Orange L. Mann went into possession of the west six and a fraction acres of this tract of land; Agatha J. Stewart went into possession of the six and a fraction acres next east; Benjamin F. Mann, Jr., went into possession of the six and a fraction acres next east; Richard Lee Mann went into possession of the six and a fraction acres next east; and Rosa Bokamper went into possession of the east six and a fraction acres. On February 10, 1920, Orange L. Mann purchased the interest of Agatha J. Stewart, and from that time had possession of the west twelve and a fraction

acres of this tract of land. Rosa Bokamper died in 1922, leaving to each of her brothers and sisters one-fifth of her part of this tract of land or an acre and a fraction. Before Rosa Bokamper's death, the east boundary of Orange L. Mann's twelve and a fraction acres was about a rod west of a large tree on the north line. After her death in 1922, it was agreed by the other heirs, or at least a part of them, that Orange L. Mann could have his acre and a fraction added to the east side, so from that time the big tree on the north line became the east line of his land. Minnie Mann Long conveyed all her individual interest in this land to Richard L. Mann, on June 6, 1918. Orange L. Mann died intestate in 1939, leaving as his heirs these appellants, Hattie Mann, his widow, and Nellie Elizabeth Hartnett, his daughter.

Appellants contend that the division of the land as described above was done by agreement of the heirs of Benjamin F. Mann, Sr., in March, 1922, after the death of Rosa Bokamper. Respondents contend that the above division was not to divide the legal title to this tract of land, but the division was for farming purposes only.

"The general rule of law is that the possession of one tenant in common is the possession of all the tenants in common; the possession being said to be 'pour me et pour tout,' [Long v. McDow, 87 Mo. l. c. 203.] In order for one tenant in common to acquire title by limitation against another tenant in common, he must do some act towards his cotenant that will amount to a disseizin or a repudiation or denial of the rights of his cotenant and such as will show an intention to hold adversely to his cotenant and such act must be totally irreconcilable with a recognition of the rights of his cotenant. [Long v. McDow, supra, and cas. cit.] It is not essential, however, that it be shown that such acts were brought to the notice of the cotenant." Hendricks v. Musgrove, 183 Mo. 300, l. c. 309, 81 S. W. 1265. "The rule as to the nature and character of possession, so as to operate as a bar against one tenant in common and in favor of another, is much more stringent than where such relation does not exist." Golden v. Tyer, 180 Mo. 196, l. c. 202, 79 S. W. 143. See, also, Warfield v. Lindell, 30 Mo. 272; Coberly v. Coberly, 189 Mo. 1, 87 S. W. 957; Hynds v. Hynds, 274 Mo. 123, 202 S. W. 387; Spence v. Spence, 238 Mo. 71, 141 S. W. 898; Misenheimer v. Amos, 221 Mo. 362, 120 S. W. 602; Rusk v. West, 290 Mo. 433, 235 S. W. 1010; Saucier v. Kremer, 297 Mo. 461, 249 S. W. 640; Allen v. Morris, 244 Mo. 357, 148 S. W. 905; Moore v. Hoffman, 327 Mo. 852, 39 S. W. (2d) 339.

The kind and type of possession that Orange L. Mann had in this thirteen and a fraction acres are shown by the following facts: Part of the time this tract was in alfalfa when the remainder of the tract was in other crops. When all of the thirty-seven and a half acres were in alfalfa, Orange L. Mann's thirteen and a fraction acres were cut separately and sold separately. Orange L. Mann kept the proceeds of the crop from his tract and made no accounting to the

other heirs of Benjamin F. Mann, Sr., and neither did these heirs account to him, or his heirs after his death, for the proceeds from crops raised on the remainder of this tract of land. When the floods destroyed part of appellants' alfalfa, respondents did not share the loss. A pipe line was laid across this land and Orange L. Mann was paid eight dollars, while the pipe-line company paid fifty or sixty dollars for laying this pipe line across this tract four, and he was told by one of the respondents that the reason that he was not paid more was because the pipe line only went across a corner of his land. Some years this land was rented by his brothers, and Orange was paid ten dollars an acre for this thirteen and a fraction acres. When Highway 71 was built about twelve years before the trial of this case in the circuit court, a rock road across a corner of this land claimed by appellants was abandoned. Orange L. Mann hired and paid to have this abandoned right-of-way cleared up so that it could be cultivated. There was testimony that in the neighborhood this west tract was known as Orange L. Mann's land.

These facts show that Orange L. Mann, and later his heirs, held possession as sole owner of this tract of thirteen and a fraction acres. It was generally known in the neighborhood as his land. What was known to his neighbors, should have been known to these respondents. His claim of ownership was open and notorious; at least, we are of the opinion that a jury could reasonably draw such a conclusion from these facts.

█ Moreover, these respondents knew that Orange L. Mann, and later his heirs, claimed this land as his own and not as a cotenant with them. Respondent Benjamin F. Mann, Jr., testified as follows:

"Q. When was the first time you heard that Orange claimed to own that thirteen acres? A. '"Oh, Lem owns so and so, he owns that over there," ' that was our talk. I would tell them once in a while, ' "He has got that to farm same as the rest of us." '

"Q. Is that what Orange would say? A. No, but others would say, " 'That part over there belongs to Lem." '

"Q. I mean as between you men. A. No, he didn't say, only just to farm.

"Q. Did he talk about it? A. *He put out lots of talk he owns it.*" (Italics ours.)

There was testimony to the effect that respondent Richard Lee Mann contracted to buy two and a half acres from the west tract of this thirty-seven acres and he let Orange L. Mann have this two and a half acres because it was just across from Orange L. Mann's land. We think, from the above-quoted testimony and the ownership of the two and a half acres, that the respondents had actual knowledge that Orange L. Mann claimed this land as his own. *"If the owner had actual knowledge of the adverse possession and claim, openness and notoriety become important.* Dausch v. Crane, 109 Mo. 323, 336, 337;

624

19 S. W. 61." (Italics ours.) Burnside v. Doolittle, 324 Mo. 722, 24 S. W. (2d) 1011, l. c. 1016.

Nor do we attach any significance to the fact this land was not improved or fenced. It was Missouri River bottom land, not always suitable to such improvements. In fact, it is generally known that a large part of the Missouri River land is not so improved. It is used as grain farms. Appellants and Orange L. Mann had such possession as was adaptable to the character of the ground and the use to which they desired to put it. Norton v. Kowazek, 193 S. W. 556.

In the beginning, Richard Lee Mann and Benjamin F. Mann, Jr., suggested that the taxes would be cheaper if paid on the whole tract instead of having it divided up. Benjamin F. Mann rented tract one, two, and three (Bokamper's place) from the other heirs. He paid the taxes on the entire tract four and deducted it from the rent due each heir. In that manner, the appellants paid the taxes on the land they claimed to own.

From what we have said, it follows that there was substantial evidence of adverse possession of the appellant, and the trial court erred in sustaining the respondents motion for a new trial.

Respondents contend that the action of the trial court in granting a new trial should be affirmed because the trial court erred in giving Instructions F and C.

Instruction F is as follows:

"The court instructs the jury that if you find and believe from the evidence that Benjamin F. Mann, Jr., paid the taxes on the Thirteen (13) and a fraction acres each year from money belonging to the defendants, or to Orange L. Mann prior to his death, that the said Benjamin F. Mann, Jr., was acting as agent for the defendants and in law said taxes were paid by defendants."

Respondents contend that this instruction assumes facts not in the evidence, in that the taxes were assessed separately on this thirteen and a fraction acres, which never were put on the tax rolls of Jackson County as a separate tract of ground. We have already stated that the tax assessment was made against the entire thirty-seven and a half acres, and respondent Benjamin F. Mann, Jr., paid taxes on the entire tract and charged appellants, as he had charged Orange L. Mann, with their proportionate part thereof.

We are unable to see where there is any such assumption in this instruction as claimed by respondents.

Instruction C, among other things, stated:

"The court further instructs the jury that it isn't necessary that you find that there was an actual notice by the defendants to the plaintiffs that they claimed the property described in evidence under claim of title, but if you believe from all of the evidence adduced that the defendants' possession was adverse, open and hostile to the plain-

tiffs, then you may infer that unity of possession has been dissolved, if so, then your verdict should be for the defendants.''

Respondents contend that the above-quoted portion of the instruction is erroneous because as they say, ''It tells the jury that it was not necessary for plaintiffs [respondents] to have actual knowledge of the fact that Orange L. Mann's occupancy and possession was in fact adverse.''

Respondents contend that they should have *actual knowledge* of Orange L. Mann's adverse occupancy and possession, but this is not the law. We have already ruled in effect that it is not ''necessary that any positive notice should be given to the cotenant, or that it devolves upon the possessor to prove a probable actual knowledge on the part of the cotenant. It is sufficient that the act itself is *overt, notorious;* and if the cotenant is ignorant of his rights or neglects them, he must bear the consequences.'' Warfield v. Lindell, 30 Mo. 272, l. c. 282.

The trial court erred in sustaining the respondents' motion for a new trial. This cause is reversed and remanded to the trial court with direction to set aside the order granting a new trial, to reinstate the verdict, and to enter final judgment thereon for appellants in accordance with the verdict. All concur.