**Sharon D. CASEY,
Respondent/Cross-Appellant,**

v.

**Earl E. CASEY,
Appellant/Cross-Respondent.**

Nos. 52346, 52369.

Missouri Court of Appeals,
Eastern District,
Division One.

Sept. 1, 1987.

Herbert A. Kasten, Ste. Genevieve, for appellant/cross-respondent.

Francis J. Elpers, Ste. Genevieve, for respondent/cross-appellant.

KELLY, Judge.

This appeal and cross appeal concern a suit for damages arising out of a bigamous marriage and the distribution of all the property acquired during that void marriage. We reverse in part and affirm in part.

Appellant Earl Casey and Lena Casey were married in November, 1968, and lived together as husband and wife in Farmington, Missouri. No children were born of this marriage, however, Earl had one son from a previous marriage. Earl and Lena separated after only three months, and Earl permanently moved to St. Louis while Lena remained in Farmington. Sometime later Earl attempted reconciliation, however Lena told him that she had no intentions of continuing their marital relationship, and that she had in fact divorced him approximately two months earlier. Relying upon Lena's statement, Earl believed that he was no longer married to Lena. However, unbeknownst to Earl, Lena had never actually obtained a divorce.

In 1976, approximately eight years later, Earl participated in a marriage ceremony with respondent Sharon Casey. At trial, Sharon testified that at the time she purportedly married Earl, she was unaware of the existing marriage between Earl and Lena. Following their marriage ceremony, Earl and Sharon lived together until 1983.

Sometime in 1978, Lena filed for a divorce and summons was served upon Earl. On June 20, 1978, Earl appeared in Circuit Court of St. Genevieve County to obtain a valid divorce from Lena. Shortly thereafter, Sharon found the summons which was served upon Earl after Lena had filed for divorce. Sharon then confronted Earl about his previous marriage, and he told her that he had since obtained a divorce.

Sharon testified that as a result of this shocking news of Earl's prior marriage, she suffered nerve problems. She subsequently consulted a physician who prescribed medication for her condition. Additionally, she consulted an attorney, who assured her that since Earl had eventually obtained a divorce from Lena, his marriage to Sharon would be considered a legally valid marriage.

Relying upon her attorney's advice that her marriage to Earl was valid, Sharon agreed to contribute her savings to purchase a farm in St. Genevieve County. On December 15, 1978, Sharon and Earl purchased a farm for a total price of $45,-000.00. Although there was conflicting testimony as to the source of the $9,000.00 downpayment, the trial court found that Sharon paid $7,000.00 and the remaining $2,000.00 was obtained by the parties pooling their money.

Both parties executed a note and deed of trust making them jointly and severally liable thereon for the remainder of the purchase price in the amount of $36,000.00. The parties shared equally in principal, interest, taxes and insurance on the real estate and both contributed to the monthly mortgage payments until March, 1983, when Sharon ceased making payments.

In December 1983, the note 'ballooned' and had to be renegotiated. Earl then became solely liable for the full balance of the note, approximately $30,000.00.

After the purchase of the farm, Sharon and Earl's relationship deteriorated, and on January 18, 1983, Earl filed a petition for dissolution of his purported marriage to Sharon. The court properly held that the marriage between Earl and Sharon was void because Earl was bound by a prior existing marriage. Further, the court found that it lacked jurisdiction and could not distribute the property under the Dissolution of Marriage Act.

Sharon then filed a petition for declaratory judgment asking the court to declare that her marriage to Earl was void, that the assets of the parties be divided and equitably liquidated, and that the court consider the conduct of the parties in the division.

Earl counterclaimed asking the court to award him damages for personal property he claimed Sharon removed; to quiet title to the real estate the parties owned; to declare that Earl was the sole owner of the real property; and to award him damages for extreme humiliation and public ridicule arising out of Sharon's alleged invasion of his privacy.

Sharon filed an answer to those counterclaims denying those allegations and further claiming an additional counterclaim and offset damages that she incurred as a result of Earl's bigamous marriage to her.

After the hearing on the various claims and counterclaims filed by the parties, the court took the matter under advisement. While the matters were still pending, the house located on the property was destroyed by fire. On June 27, 1986, a few days after the fire, the lien holder of the real estate foreclosed thereon, and the farm was sold in a partition sale. The sale yielded a balance of $6,085.73, over and above the mortgage and expenses. The court found that Sharon was entitled to the full net proceeds totalling $6,085.73, because she had contributed a majority of the downpayment.

Earl had insured the house and its contents. The insurance totalled $21,000.00 on the house and $1,334.32 on the personal property. Sharon filed a motion for a hearing requesting the court to determine the rights of the parties in the fire insurance proceeds. The evidence shows that the fire insurance had been purchased in Earl's name and that he had paid the premiums of the fire insurance policy which was the subject of the claim.

On September 22, 1986, the court entered its findings of fact and conclusions of law. The court found that the proceeds from the insurance company was Earl's property and found against Earl on all of Earl's additional counterclaims. Additionally, the court awarded each party the personal property in their possession, and awarded Sharon a judgment of $9,500.00. This $9,500.00 consisted of the $6,085.73, which the court found to be Sharon's contribution towards the downpayment on the farm.

Further, the court found that because of the bigamous marriage, Earl owed Sharon $2,575.00. The $2,575.00 consisted of $1,500.00 for lost wages, $75.00 for medical care, and $1,000.00 for humiliation, embarrassment, and mental shock due to the bigamous marriage.

Earl appealed the judgment awarded to Sharon for the tort of bigamy and the award of all the net proceeds realized from the partition sale. Sharon cross appealed contending that the trial court erred in ruling that the fire insurance proceeds were the sole property of Earl. In the interest of judicial economy, we have consolidated the appeal and cross appeal.

We initially address Earl's contention that the trial court erred by awarding Sharon $2,575.00 for the tort of bigamy. We agree.

The trial court's findings of fact, conclusions of law, and order and decree includes the following order:

The court finds that when the marriage to defendant was declared void, plaintiff suffered humiliation, embarrassment, and mental shock when she realized that from 1976 to 1982 she had lived as husband and wife with defendant, and that the void marriage was due to the bigamous act of her "husband", including the fact that she pooled all her savings and earnings with defendant, whom she assumed was her legal husband. The fact that defendant did not verify his divorce from his second wife is difficult to understand since he knew the procedures about divorce since he had been divorced from his first wife. The Court, therefore, finds that defendant because of the bigamous marriage, owes plaintiff $2,575.00 being for lost wages of $1,500.00, medical care of $75.00, and $1,000.00, for humiliation, embarrassment and mental shock.

We initially note that Sharon's counterclaim and offset alleges damages for "financial, physical and emotional injury ... and grievous emotional distress, humiliation and ridicule" allegedly suffered by her for the "tort" of bigamy. She further al-

leges that Earl's actions were "willful, wanton and malicious."

■ Our research has disclosed no Missouri cases recognizing the tort of bigamy. In view of all the evidence, it is doubtful whether Earl intentionally and fraudulently induced Sharon to enter into a marriage which he knew would be bigamous. We therefore find that the record does not support a cause of action based upon an intentional tort.

■ Additionally, Sharon would not be entitled to recover for emotional distress, because there was no medical evidence offered or admitted at trial. In order to recover for emotional distress where no physical injury is involved, plaintiff must prove by expert medical testimony that the emotional distress of mental injury was medically diagnosed and of sufficient severity as to be medically significant. *Bass v. Nooney Co.*, 646 S.W.2d 765, 772–773[4] (Mo. banc 1983); *State ex rel. Benz v. Blackwell*, 716 S.W.2d 270, 273[1] (Mo.App. 1986).

Accordingly, we reverse on the issue of damages, and deny Sharon the award of $2,575.00 based upon her bigamous marriage.

We next address Earl's contention that the trial court erred by awarding Sharon the entire amount of the net proceeds from the partition sale. Earl contends that he is entitled to one-half of the net proceeds.

The trial court found that Sharon had contributed $7,000.00 towards the $9,000.00 downpayment, and therefore, awarded Sharon the full net proceeds totalling $6,085.73.

Sharon's amended petition was in three counts. In Count I, Sharon requested the court to make a finding that her marriage to Earl was void and enter a declaratory judgment to that effect; in Count II, Sharon alleged the existence of a partnership and prayed for its dissolution, an accounting, and a sale of the partnership assets and damages; in Count III, Sharon requested partition and sale of the farm. Sharon further alleged that the real estate was encumbered by a deed of trust and

that the land "ought to be partitioned according to the respective rights of the parties."

Earl alleges that under Sharon's partition cause of action she was only entitled to one-half of the net proceeds, because she alleged in her petition that both she and Earl "are each seized of an undivided one-half (½) interest in the following described real estate ..." Earl contends that the trial court erred by awarding Sharon the entire net proceeds of the sale, because the judgment exceeded her prayer.

■ The trial court found that Sharon had provided a majority of the downpayment, and therefore the relief granted by the trial court was equitable relief in the form of an accounting rather than the legal relief of damages. "Although an award of damages is usually a legal remedy, a court of equity may award damages where they are the relief necessary in order to do equity." *State ex rel. Willman v. Sloan*, 574 S.W.2d 421, 422[2] (Mo. banc 1978). The trial court may resort to a remedy within the traditional province of law, as by a judgment for money by way of restitution. *Perry v. Perry*, 484 S.W.2d 257, 259[3] (Mo.1972).

■ In this equitable cause of action, the respective rights of the parties can only be determined from a complete record which contains evidence of the respective contributions of the parties to the acquisition of the farm.

We rely on *Montgomery v. Roberts*, 714 S.W.2d 234 (Mo.App.1986). In *Montgomery*, the sister of a landowner filed an action to quiet title to property after the landowner's death. The landowner executed a quit claim deed to defendant's aunt, purporting to create a tenancy by the entireties. The trial court found that at the time of the conveyance, the landowner and defendant's aunt were not married. Therefore, the landowner and defendant's aunt could only take title as tenants in common. The trial concluded that since defendant's aunt made no contribution to the purchase price of the property, she was not entitled to any share of the property. The court of

appeals affirmed, concluding that the presumption that co-tenants take equal undivided interests may be rebutted by proof. The court stated:

'[W]here a tenancy by the entireties does not arise because the parties are not married, each tenant in common may show the part he contributed to the whole.' 4 George Thompson, *Thompson on Real Property*, § 1786 (1979).

. . . . .

In the present case, Vernon and Edna were tenants in common since they were not married. Since there was no evidence of donative intent on Vernon's part nor the existence of a family relationship, the property had to be apportioned according to the contribution of each towards the acquisition of the property. Annotation 31 A.L.R.2d loc. cit. 1311.

In the instant case, since there was no evidence of donative intent on Sharon's part nor the existence of a family relationship, the property must be apportioned according to the contribution of each towards the acquisition of the property.

Earl relies on *Brooks v. Kunz*, 637 S.W.2d 135 (Mo.App.1982), for the proposition that he is entitled to one-half of the net proceeds because of his execution of the note and deed of trust at the time the farm was purchased. We disagree.

In *Brooks*, a man and woman *knowingly* lived together in meretricious relations, and acquired real estate as husband and wife. Both parties were aware that they were living together under a non-marital relationship. The court of appeals held that while there was no evidence that plaintiff contributed any cash and scant evidence of compensable services towards the purchase of the property, her execution of the note and deed of trust at the time of purchase did constitute a contribution towards the acquisition of the property entitling her to a proportion of the sale proceeds. *Id.* at 138.

Initially, we note that in *Brooks* both parties were aware that they were not legally married. In the present case, however, Sharon was unaware of the existing marriage between Earl and Lena, and be-

lieved that she and Earl were legally married. Further, Sharon testified that she would not have invested in the real estate had she known of Earl's marriage. Therefore, *Brooks* is distinguishable, in that the evidence indicates that Sharon would not have executed a note and deed of trust had she been aware of her bigamous marriage.

Although the facts in *Brooks* are distinguishable from the case at bar, the court in *Brooks* ultimately determines each co-tenant's interest in the net proceeds by allowing a credit to each co-tenant for one-half of the mortgage amount financed, but allowing contribution if one co-tenant pays more than his proportionate share.

Here, the trial court found that Sharon paid $7,000.00 cash towards the $9,000.00 downpayment. The record reflects that both Sharon and Earl jointly executed a note for the remaining portion of the purchase price. In March 1983, Sharon ceased making the monthly payments on the note. Earl renegotiated the note in December 1983, and ultimately the property was destroyed by fire and sold in a partition sale.

We have searched the record to determine the amounts paid by Earl and Sharon to reduce the mortgage after the purchase, but have been unable to do so because we have no record of the individual contributions paid by each party.

We find that both Earl and Sharon have an interest in the property but reverse the cause because the exact amounts paid by Earl and Sharon are not clear from the record before us. Accordingly, we reverse the award of the entire net proceeds to Sharon, and remand for a new trial at which evidence of the respective contributions of the parties to the acquisition of the farm property should be adduced.

 We now address Sharon's contention that the trial court erred in ruling that the fire insurance proceeds were the sole property of Earl. In support of this contention, Sharon alleges that the court erred in refusing to hear additional evidence regarding the cancellation of the old insurance policy which was in joint names and the payment of the premiums on the new

policy. She further contends that there was substantial evidence for a finding of fraudulent misrepresentation by Earl, and the trial court denied her an opportunity to present additional evidence which would establish her claim.

We review the trial court's judgment under *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976), and give deference to the trial court's findings.

After considering the evidence, the trial court found that the house and the contents were insured by Earl only, as Sharon's name did not appear on the policy. The following factors were considered by the court:

1. The insurance policy in existence at the time of the fire was in Earl's name only;
2. Earl purchased the insurance policy and paid all the premiums; and
3. Sharon testified that she intended to insure the property in her own name.

The general rule of law concerning the rights of the joint owners or tenants in common to insurance proceeds contracted for by one of said owners is succinctly stated in *Crabtree v. Maupin Seed Co.,* 294 S.W. 433, 435[2] (Mo.App.1927).

> Where one of two or more joint owners, or owners in common of property, insures his interest separately against loss by fire, he is entitled to recover and retain the insurance. In such a case the insurance does not inure to the benefit of his cotenant.

*See also Carlton v. Wilson,* 665 S.W.2d 356, 359[4] (Mo.App.1984).

We find there was substantial evidence before the trial court to support a conclusion that the fire insurance proceeds were the sole property of Earl. Accordingly, Sharon's point is without merit.

The judgment is affirmed in part and reversed in part. The trial court's order awarding Earl the fire insurance proceeds is affirmed. We reverse Sharon's award of $2,575.00 based upon her bigamous marriage. We reverse the award of the entire net proceeds to Sharon, and remand for a new trial at which evidence of the respective contributions of the parties to the acquisition of the farm property should be adduced.

Costs of this appeal are taxed half against Sharon and half against Earl.

SATZ, P.J., and CRIST, J., concur.