Lougene BASS, Plaintiff–Appellant,

v.

Leroy and May ROUNDS, Defendants–Respondents.

No. 58372.

Missouri Court of Appeals, Eastern District, Division Four.

May 28, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 19, 1991.

Martin M. Lipsitz, St. Louis, for plaintiff-appellant.

Theresamar Mantese, St. Louis, for defendants-respondents.

SATZ, Judge.

This is a partition action. Plaintiff, Ms. Lougene Bass (Ms. Bass), requested the trial court to partition the real property in question, which she allegedly held as a tenant in common with defendant Mr. Leroy Rounds (Mr. Rounds). Ms. Bass joined Mr. Rounds' wife, Mrs. Mary Rounds (Mrs. Rounds), as a co-defendant as well as Farmers Savings Bank, a previous holder of a security interest in the property. Mr. and Mrs. Rounds counterclaimed,[1] requesting the court to quiet title in them on the grounds of adverse possession. Following trial, the court made Findings of Fact and Conclusions of Law and quieted title in Mr. Rounds on the grounds that he had acquired title from Ms. Bass by adverse possession and that she was equitably estopped from asserting title. Ms. Bass appeals. We reverse and remand.

■ We review this court-tried case under the well known principles established by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976) and Rule 73.01(c). We defer to the credibility determinations made by the trial court, and we accept as true the evidence and permissible inferences favorable to the prevailing party, Mr. Rounds, and disregard contrary evidence and inferences. E.g., *Snowden v. Gaynor*, 710 S.W.2d 481, 483 (Mo.App.1986). So viewed, the record supports the Findings of Fact made by the trial court.

Ms. Bass and Mr. Rounds began living together sometime prior to June 7, 1973. On or about that date, they purchased a house in St. Louis. They represented themselves throughout the purchase as "Leroy Rounds and Lougene Rounds, his wife."

The purchase price of the house was $17,750. They each contributed $450 to the down payment. They borrowed the remaining $16,850 by executing a promissory note and deed of trust as "Leroy Rounds and Lougene Rounds, his wife." Although, at that time, Ms. Bass was married to someone else, she and Mr. Rounds each testified they intended to marry one another, but they never did.

Ms. Bass vacated the house sometime in June 1974, after a violent altercation. After some unsuccessful pleas to get her to return, Mr. Rounds changed the locks on the doors. He has lived in the house continuously since then.

Mrs. Rounds has lived in the house since 1980. She and Mr. Rounds were married in 1984. Mr. Rounds and/or Mrs. Rounds have made all payments on the note since Ms. Bass left the house in 1974. Ms. Bass made none. Mr. Rounds paid for the insurance on the house and paid the taxes, as well as paying for maintenance of and improvements to the house. As of the date of trial, Mr. Rounds had made the following contributions to the purchase and maintenance of the house: $450 toward the down payment, $25,491.75 principal and interest payments on the note, $6,703.12 taxes and insurance, and $1,350 for improvements, totalling $33,994.87. The only cash contribution made by Ms. Bass was her $450 toward the down payment.

After Ms. Bass left the house in 1974, she and Mr. Rounds had occasional social contact but discussed the house only twice. In 1982, he phoned her and requested her to "[get] her name off the deed." She refused. He asked her again in 1984. This time she demanded $10,000 to do so. He refused to pay this amount.

Then, in 1988, she filed the present partition action. Mr. and Mrs. Rounds filed a two count counterclaim, seeking, in Count I, to have title quieted in them on the grounds that Ms. Bass contributed only $450 to the purchase of the house, and, in Count II, claiming title by adverse possession.

On the facts previously recited, the trial court concluded Ms. Bass and Mr. Rounds initially owned the house as tenants in common, and, apparently, based solely on their respective cash contributions to the purchase of the house, the court also concluded that any presumption they held equal interests would be rebutted by their un-

---

1. The counterclaim, styled a "third-party petition," joined several other defendants who may have had an interest in the property. Their precise status does not affect our decision.

equal contributions. At best, the court concluded, Ms. Bass would be entitled to no more than the return of $450, her contribution, from the proceeds of a partition sale.

However, the court concluded that Mr. Rounds acquired the entire title by adverse possession and, therefore, quieted title in him. The court also stated that Mr. Rounds was entitled to have title quieted in him under the doctrine of equitable estoppel, although that relief was not sought under that doctrine.

On appeal, Ms. Bass challenges the court's conclusions that Mr. Rounds acquired sole title by adverse possession and that she was estopped from asserting title. She also attacks the method used by the trial court to determine her interest in the property, if her interest is to be based upon the parties' relative contributions to the purchase of the property.

The trial court's conclusions concerning adverse possession and equitable estoppel are not supported by its Findings of Fact; and its method of determining the relative interests of the parties is erroneous.

### Adverse Possession

To prove adverse possession, the party claiming it must show that his possession was 1) actual; 2) hostile; 3) open and notorious; 4) exclusive; and 5) continuous for the 10 years required by § 516.010, R.S.Mo.1986. *Walker v. Walker*, 509 S.W.2d 102, 106 (Mo.1974). Possession must be open and notorious because it gives the true owner cause to know that an adverse claim of ownership is being made by another. *Porter v. Posey*, 592 S.W.2d 844, 849 (Mo.App.1979). The determination of openness and notoriety centers on whether the particular acts in question are acts of ownership and are sufficient to give the existing owner notice of the claim being made. *Id.*

However, some "acts of ownership" on the part of one co-tenant are not necessarily inconsistent with the continued ownership of the other co-tenant. A tenant-in-common is presumed to hold possession for his co-tenants. *Mann v. Mann*, 353 Mo. 619, 183 S.W.2d 557, 558 (1944). To over-come this presumption, he must show acts which constitute a disseizin or a repudiation or a denial of the rights of his co-tenants, which show an intention to hold adversely to the co-tenant, and which are totally irreconcilable with a recognition of the rights of the co-tenant. *Id.* Thus, in *Mann, supra,* the claimant repeatedly told his neighbors he was the sole owner of the farmland in question, in addition to farming the land exclusively for many years. *Id.* 183 S.W.2d at 559. In *Replogle v. Replogle*, 350 S.W.2d 735 (Mo.1961), the co-tenant claiming title by adverse possession showed he had lived on and improved the land as his own for several years, paying all expenses. But, more important was the fact he had previously administered his co-tenant's estate after the statutorily presumed death of the co-tenant. The claimant initiated the estate proceedings in order to remove his co-tenant's interest; thereafter, he represented himself as the sole owner. *Id.* at 739. Likewise, in *Hunter v. Hunter*, 261 Mo. 799, 237 S.W.2d 100 (1951), one brother administered the estate of the other, who was serving a life sentence in prison, under the civil death statute. He then administered his parents' estates, declaring himself to be their sole heir, and taking sole possession of the real estate. The court held these acts to be overtly hostile and sufficient to give constructive notice of the claim; it also found the co-tenant in prison had actual notice of the other's hostile claim. *Id.* 237 S.W.2d at 102.

Simply stated, to prevail, the co-tenant claiming adverse possession must prove not only acts consistent with his ownership but acts unequivocally inconsistent with the ownership of his co-tenants. Such acts are necessary to provide notice that his possession is hostile to the interests of his co-tenants.

Mr. Rounds failed to show such acts here. He did prove he lived in the house exclusively and continuously for 17 years, paying taxes, insurance, and utilities, making mortgage payments, and repairing and improving the property. However, even

when the contesting parties are not co-tenants, such acts are not sufficient to support a claim of adverse possession. *See, Pahler v. Schoenhals,* 234 S.W.2d 581, 582 (Mo.1950). Certainly, they would not be sufficiently unequivocal to support a co-tenant's claim of adverse possession. Quite simply, here, these acts are equally consistent with Mr. Rounds taking exclusive possession with the unstated permission of Ms. Bass, his co-tenant, and also equally consistent with his paying obligations to protect his interests in the property.

Admittedly, Mr. Rounds did change the locks on the door. But, subsequently, he twice asked Ms. Bass to "get her name off the house," and then dropped the matter when she named a price too high. This is a clear recognition of Ms. Bass's ownership rights. Mr. Rounds failed to show that his possession was hostile, *Mann, supra,* at 558. And, therefore, the trial court erred in concluding he acquired sole title by adverse possession.

### Equitable Estoppel

The trial court also stated that Ms. Bass was equitably estopped from asserting title. This is an erroneous statement.

■ Mr. and Mrs. Rounds did not plead estoppel as an affirmative defense in their answer, nor, understandably, did they attempt to assert it as an affirmative claim for relief in their two count counterclaim. Moreover, there is nothing in the record to show this issue was tried by implied consent. *See, e.g. Buchanan v. Mitchell,* 785 S.W.2d 317, 319 (Mo.App.1990). Nonetheless, on appeal, the parties address this issue as if it were tried. We likewise do so.

■ To support estoppel, there must be a representation made by the party estopped and relied upon by another party who changes his position to his detriment. *E.g., Prouse v. Schmidt,* 156 S.W.2d 919, 921 (Mo.1941). The representation may be manifested by affirmative conduct, either acts or words, or by silence amounting to concealment of material facts. *Id.* These facts must be known to the party estopped, and unknown to the other party. *Id.* The "representation" must be made with the intention that it will be acted upon by the other party, or made under circumstances which imply a reasonable expectation that it will be acted upon. *Id.*

■ Even viewing the evidence in the light most favorable to the prevailing party, Mr. Rounds, it is clear that none of these essential elements are present here. Mr. Rounds argues that Ms. Bass's silence in failing to assert her interest for so many years constitutes a representation. We disagree.

■ Twice, Ms. Bass expressly asserted her interest in the house, telling Mr. Rounds she wished to retain her interest, or that she would sell it to him for $10,000. This hardly amounts to a silence manifesting an intent to abandon her interest. Moreover, Ms. Bass, as a co-tenant, was under no duty to file suit for partition at an earlier date, nor to participate in the payments and upkeep on the property. Absent a duty to speak or act, failure to do so cannot form the basis of an estoppel. *E.g., U.A.W.–C.I.O. Local 31 Federal Credit Union v. Royal Ins. Co., Ltd.,* 594 S.W.2d 276 (Mo.1980); *Chrysler Credit Corp. v. Friendly Ford, Inc.,* 535 S.W.2d 110 (Mo. App.1976). Furthermore, since partition is a right equally available to co-tenants, a co-tenant cannot be barred from asserting it by reason of lapse of time. *Armor v. Frey,* 253 Mo. 447, 161 S.W. 829, 838 (1913). "[M]ere standing by in silence will not bar one from asserting a title to land which has been spread upon the public records, so long as no act is done to mislead the other party." *Prouse, supra,* at 918. In addition, there simply is no operative fact showing that Mr. Rounds acted in reliance on any affirmative conduct or silence of Ms. Bass. *Prouse, supra.*

In support of its finding of equitable estoppel, the trial court relies on *Podschun v. Rice,* 769 S.W.2d 441 (Mo.App.1989). The trial court's reliance is misplaced.

In *Podschun,* the parties were a married couple who purchased a house. Less than a year later, the wife moved out. She left the state and was granted a divorce in

Colorado. The divorce decree directed each party to retain "whatever property is in his respective possession." *Id.* at 442. Later, the wife's attorney wrote the husband that she was willing to let him keep the house so long as he paid the balance remaining on the mortgage. *Id.* Twenty-two years later, the husband filed suit to quiet title and the wife counter-claimed for partition. The trial court found the wife was equitably estopped from asserting title because she purported to abandon her interest to her husband, and he relied on her statements to that effect to his detriment for 22 years. *Id.* This finding was affirmed on appeal. *Id.* at 443.

Here, there is no evidence Ms. Bass made any statement which can be construed as an abandonment of her interest in the house and upon which Mr. Rounds relied to his detriment. As noted, the evidence in fact showed that Ms. Bass twice affirmed her intention to retain her interest in the house.

Quite simply, there is no basis for the court quieting sole title in Mr. Rounds on the grounds of equitable estoppel.

### Partition

Since we have determined that Ms. Bass retains an ownership interest in the property in question, we must remand this cause to the trial court for further partition proceedings in accord with § 528.030 *et seq.* RSMo 1986 and Rule 96. We set out the guidelines the trial court is to use in apportioning the proceeds of the partition sale.

■■■ A conveyance to grantees as husband and wife, who are not in fact married, is presumed to create a tenancy in common, and, in a subsequent partition suit, the property so conveyed is apportioned to the grantees in proportion to their relative contributions toward the acquisition of the property. *Anderson v. Stacker*, 317 S.W.2d 417, 421 (Mo.1958).

In *Anderson*, the parties purchased a house as husband and wife, although they were not married, and lived together there for three years. The man then moved out, and, four years later, he filed suit for partition. There was testimony the woman contributed cash to the down payment and co-signed the note and deed of trust. The trial court believed otherwise, however, and neither the note nor deed of trust were admitted into evidence. The trial court specifically found the man had made all payments to acquire the home and granted him sole title. Reviewing the evidence on appeal, the Supreme Court stated: "it may only be said, in accordance with the general rule, that the trial court has found and apportioned the interests of the parties proportionately to their contributions to its acquisition." *Id.* at 421.

In *Brooks v. Kunz*, 637 S.W.2d 135 (Mo. App.1982), this Court was confronted with the issue of apportionment in a partition action, when the evidence showed the unmarried grantees, taking as purported husband and wife, purchased the property, in part, by co-signing a promissory note secured by a co-signed deed of trust. At closing, the man made a personal payment of $10,000 cash, and the man and woman each signed the note and deed of trust for $7,500. *Id.* at 137–38. This Court noted that in *Anderson* the note and deed of trust were not in evidence and, thus, the *Anderson* Court did not address the "effect to be given financing a purchase by joint execution of a note and deed of trust." *Id.* at 139, n. 5.

On the facts before it, the Court believed there were at least three methods to apportion the parties' interests. The court first discussed two of these methods and rejected them.

The Court said the parties' interests could be determined solely as a function of the amount of cash each paid at the time of closing; or their interests could be determined as a function of the amount of cash paid at the time of closing plus any amount paid to reduce the mortgage after closing. *Id.* at 139. In rejecting both of these methods, the Court stated:

Under the first method, a party who contributed no cash towards the purchase price but subsequently pays off part of the mortgage would have no interest in the property. Under the second method,

as that same party pays off part of the mortgage, his ownership interest increases with each payment. The first method is unfair, while the second allows a constantly shifting ownership interest, or as [has been] stated: "[we] cannot agree that, after land has been conveyed to A and B ..., quantity of interest shall be determined by subsequent contributions made through a period of years ... on presumptions bobbing up with each cash payment, causing agile interests to hop from one co-owner to the other." (Citations omitted).

*Id.*

The Court then turned to the facts before it. Since the man's cash payment was only part of the consideration paid at closing, the Court reasoned, the fact the parties contributed unequal sums of cash to that consideration does not show they took or intended to take their interests proportional to their cash contributions. *Id.* at 138. To the Court, "logic and fairness" dictated an apportionment which allows "a credit to each co-tenant for one-half the mortgage amount financed, but allow[s] contribution if one co-tenant pays more than his proportionate share." *Id.* at 139.

Since the woman made herself severally liable for the full amount of the note, the Court said, she effectively contributed to the purchase price one-half of the borrowed amount, or $3,750. ($7,500/2). The man, the Court said, contributed $10,000 cash plus one-half of the $7,000 note, $3,750, for a total contribution of $13,750. The woman thus contributed 22 percent of the purchase price, and the Court allowed her 22 percent of the proceeds from the partition sale. *Id.* at 140. Then, since the man actually paid the entire $7,500 principal amount of the note, the Court permitted him a credit of $3,750—the woman's share of the note—against her share of the proceeds.

This Court again applied the *Brooks'* reasoning in *Vickers v. Vickers*, 762 S.W.2d 482 (Mo.App.1988). This reasoning controls the facts here.

The trial court attempted to distinguish *Brooks* on the grounds that the common property in that case was farmland rather than, as here, a house on a city lot and that the parties in *Brooks* lived together for several years prior to purchasing the property. These are distinctions without a difference.

Here, Mr. Rounds and Ms. Bass lived together for about two years prior to buying their house, which is longer than the parties in *Brooks* lived together before buying their farm. *Brooks v. Kunz*, 597 S.W.2d 183, 185 (Mo.App.1980) (first appeal). Moreover, no distinction is made in *Anderson, Brooks* or *Vickers, supra,* between residential and farm property. The farmland at issue in *Brooks* included a residence the parties inhabited for a little over a year. *Id.* And, *Vickers* and *Anderson, supra,* like the instant case, concerned houses on city lots. The uses to which land may be put is simply not relevant to the question of the co-tenants' proportional interests in this type of partition action.

Mr. Rounds argues that *Brooks* is distinguishable because the parties in *Brooks* lived together as man and wife for several years, continued their relationship even after they quit living together, had two children, purchased various properties together and improved the property in question while living there. These facts, Mr. Rounds argues, show the parties intended their contribution to be ongoing. Even if those facts show that intent, the facts here do not show Mr. Rounds and Ms. Bass had any different intent at the time they purchased the house. They, too, were living together and purchased the house as man and wife. Both testified they intended to marry and live in this house. As noted above, Ms. Bass and Mr. Rounds had lived together longer than the parties in *Brooks* at the time the properties in question were purchased. Thus, here, as much as in *Brooks*, the evidence shows the parties intended their contributions to be ongoing.

Mr. Rounds also cites three cases which, he contends, show this Court does not strictly enforce the principle that a party's obligation on a promissory note entitles him or her to an interest in the property.

We read the holding and the teaching of these cases differently.

In *Estate of Wilson v. Kilgore,* 740 S.W.2d 694 (Mo.App.1987), this Court determined the interests of tenants in common in personal, not real, property, and, held, consistent with *Brooks,* that in the absence of any credible evidence of the parties' respective contributions to the purchase, the only fair division was to give each party half. *Id.* at 679. In *Casey v. Casey,* 736 S.W.2d 69 (Mo.App.1987), this Court, in fact, held that one party's obligation on the note gave him an interest in the real property in issue, reversed the trial court's award of all the proceeds from a partition sale to the other party, and remanded the cause for a determination of the "respective contributions" of each party "to the acquisition of the property." *Id.* at 73. And, in *Hudson v. DeLonjay,* 732 S.W.2d 922 (Mo.App.1987), this Court held that where the tenants in common agreed at the time of purchase to take in certain proportions, that agreement would be respected. *Id.* at 930. There is, however, no such agreement here.

It is undisputed that each party here contributed one-half of the down payment, and that each was liable on the note by which the remainder of the purchase price was obtained. Thus, under the principle adopted by this Court in *Brooks, supra,* and since consistently followed, each party here contributed equally to the purchase of the house, and on remand, the proceeds of the partition sale should be equally divided, subject to appropriate set-offs or reimbursements for subsequent expenditures.

Since one-half of Mr. Rounds' payments on principal and interest benefited Ms. Bass by protecting her interest, he should be reimbursed that amount from her share of the proceeds of the partition sale. Mr. Rounds should also be reimbursed for one-half of his expenditures for taxes, insurance and necessary repairs and improvements to the house, all of which benefited both parties as co-tenants. *See, e.g. Hartog v. Siegler,* 615 S.W.2d 632, 636 (Mo. App.1981).

The trial court has determined the amount of Mr. Rounds' expenditures on these items as of the date of trial. The record supports these findings, and they were not contested on appeal. In apportioning the proceeds from the partition sale, the trial court must make appropriate additional determinations of relevant expenditures made by Mr. Rounds since the date of trial here.

Ms. Bass argues the trial court erred when it refused to grant her an offset for the fair rental value of Mr. Bass's exclusive possession. We disagree.

Usually, in the absence of an agreement to pay rent, the co-tenant in possession who has not ousted other co-tenants is not liable for rent to the out-of-possession co-tenants. *Goforth v. Ellis,* 300 S.W.2d 379, 383 (Mo.1957). However, where the co-tenant in possession seeks reimbursement for expenditures made in connection with the property, the other co-tenants have been permitted to offset the reimbursement with the reasonable value of the possession of the premises. *Beckham v. Eggleston,* 341 S.W.2d 337, 340 (Mo.App.1960). This value is the reasonable rental value of the premises without the improvements made by the tenant in possession. *Id.*

Here, the trial court below found Ms. Bass proffered no credible evidence of the rental value of the property. When she was asked if she was familiar with the rents in the area for a comparable house, she responded, "No." Although, as an owner, she is presumed competent to testify to her opinion of the value of her property, *Schulze v. C & H Builders,* 761 S.W.2d 219, 223 (Mo.App.1988), her opinion is inadmissible where it is shown to be based upon an improper foundation. *Shelby County R–IV School District v. Herman,* 392 S.W.2d 609, 613 (Mo.1965). Similarly, here, Ms. Bass admitted she had no foundation to support any rental value she would place on the property. The trial court was well within its discretion when, subsequent to her admission, it continually sustained objections to questions from her counsel seeking her opinion of the rental value of the

property. *See, e.g., Silliman v. Chrisman,* 584 S.W.2d 441, 447 (Mo.App.1979).

Accordingly, we reverse the judgment of the trial court and remand this cause with directions to process Ms. Bass's petition for partition in accord with this opinion.

SMITH, P.J., and CARL R. GAERTNER, J., concur.