Don LITTLEFIELD and Vera Lit-
tlefield, his wife, Plaintiffs–
Appellants,

v.

James Matthew EDMONDS and
Beth Ann Edmonds, his wife,
Defendants–Respondents.

No. 26836.

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 29, 2005.

Abe R. Paul, Pineville, for appellants.

Bruce A. Copeland, Joplin, for respondents.

NANCY STEFFEN RAHMEYER, Judge.

Plaintiffs, Don and Vera Littlefield, purchased seventy-seven acres at a foreclosure sale on September 16, 1993.[1] The seventy-seven acres were subject to a recorded deed of trust; Woodrow and Charlotte Edmonds, the parents of Defendant James Matthew Edmonds, were the grantors of the deed of trust. Plaintiffs brought claims in a court-tried case to ascertain the parties' rights and responsibilities, and subsequently brought this appeal from an adverse judgment. We affirm the judgment.

In November of 1981, Woodrow and Charlotte Edmonds executed a promissory note for the amount of $118,300.00 and a deed of trust to Federal Land Bank; they pledged as collateral real estate including the seventy-seven acres that are the subject of this suit and additional acreage, which included eighty acres and their home place. In May of 1987, Woodrow Edmonds[2] sold one hundred seventeen acres to Earl Carroll. At the time of this transaction, the seventy-seven acre tract was sold subject to the deed of trust entered into by Woodrow and Charlotte Edmonds with the Federal Land Bank and a warranty deed in which Woodrow Edmonds promised to continue paying on the deed of trust entered into with the Federal Land Bank. Woodrow Edmonds and Earl Carroll also executed a new deed of trust, representing a loan from Woodrow Edmonds to Earl Carroll.[3] Pursuant to the terms of the warranty deed, Woodrow Edmonds continued making payments on the original deed of trust entered into with the Federal Land Bank. When Earl Carroll defaulted under the terms of his deed of trust to Woodrow Edmonds, Woodrow Edmonds held a foreclosure trustee's sale where the one hundred seventeen acres were sold to Plaintiffs for the sum of $40,000.00.

At trial, there was no evidence of the fair market value of the forty acres or of the seventy-seven acres subject to the deed of trust. Plaintiffs admitted they knew about the Federal Land Bank deed of trust prior to the sale and understood that a deed of trust could be foreclosed if the underlying note was not paid and the deed of trust was not released; they even adjusted their bid at the foreclosure sale to account for the existence of the Federal Land Bank deed of trust. Immediately after the purchase of the property, Plaintiffs tried to sell a part of the seventy-seven acre tract to the school district but could not because of a "cloud on title"; the selling price to the school was not in the record.

After the foreclosure, Defendants attempted to take back the seventy-seven acre tract by first approaching Federal Land Bank seeking a partial release of all the property subject to the lien except the seventy-seven acres; however, the release was not approved by the bank. Subsequently, James Matthew Edmonds paid the note to the Federal Land Bank and was assigned the note and deed of trust; he subsequently executed the partial deed of release on the eighty-acre home place, but left in place the deed of trust on the seventy-seven acres. No payments were made on the assigned Federal Land Bank note after May 1, 1993, nor was any de-

---

1. Plaintiffs also purchased a forty-acre tract, which was not encumbered by a deed of trust and is not the subject of this lawsuit.

2. Charlotte Edmonds was deceased by this time.

3. The record does not reflect the sale price of the one hundred seventeen acres.

mand ever made to the Senior Edmonds on the note. The interest accrued and at the time of trial a balance of $202,217.49 remained. Plaintiffs claimed to have expended $26,584.00 in improvements to the seventy-seven acres.

Plaintiffs brought suit requesting: (1) a declaration of judgment that the Federal Land Bank deed of trust of November 16, 1981, be deemed no longer actionable as a lien against the property of the Plaintiffs; (2) a permanent injunction prohibiting Defendants from foreclosing on the seventy-seven acres, alleging that Defendants had fraudulently concealed from Plaintiffs Defendants' status as lien holders resulting from Defendants' purchase of the Federal Land Bank note and deed of trust; and (3) that the court bar any action by Defendants to foreclose on the seventy-seven acres pursuant to the Federal Land Bank deed of trust under the doctrine of estoppel. Plaintiffs argue on appeal that they should have been granted judgment because Defendants concealed from Plaintiffs their status as lien holders of the Federal Land Bank note and deed of trust. They further claim they were unaware that no payments were made on the underlying note for the deed of trust.

The court found no contractual or fiduciary relationship between Plaintiffs and Defendants; it further found no transaction occurred between them which would have created a duty on the part of Defendants to provide Plaintiffs with information that was otherwise accessible to Plaintiffs. The court further noted that Plaintiffs had the ability to ascertain the transactions and all facts material to the transactions claimed in their petition but failed to use reasonable diligence to do so; it specifically found that any claimed reliance that Woodrow Edmonds would pay the balance of the promissory note owed to Federal Land Bank by Plaintiffs was not justified nor sufficient to establish any of the elements of proof necessary to their claim for relief.

Plaintiffs now bring three claims of error. Plaintiffs first claim that the trial court erred "as a matter of law" in its findings of fact that Plaintiffs failed to prove fraud "by silence" on the part of Defendants in taking an assignment and allowing the note to go into default without notifying Plaintiffs of their intent to default on the note. The thrust of Plaintiffs' argument is that they had every right to rely on the performance of Woodrow Edmonds to pay the balance due on the Federal Land Bank deed of trust because he had a good reputation in the community for paying his bills, and if he had not paid, the remaining eighty-acre tract subject to the initial deed of trust would have been exposed to foreclosure.

█ Generally, Plaintiffs must prove nine elements to establish fraud: (1) a representation of fact; (2) the falsity of the representation; (3) the materiality of the representation; (4) knowledge by the speaker of the representation's falsity or ignorance by the speaker of its truth or falsity; (5) an intention by the speaker that the representation be acted on by the hearer; (6) the hearer's ignorance of the truth or falsity of the representation; (7) reliance by the hearer on the representation; (8) the right of the hearer to rely on the speaker's truthfulness; and (9) injury to the hearer as a result of the hearer's reliance on the representation. *State ex rel. PaineWebber, Inc. v. Voorhees*, 891 S.W.2d 126, 128 (Mo. banc 1995). It is undisputed that Defendants had no communication at any time with Plaintiffs and they did not inform Plaintiffs of the note or assignment of the payments. It is further undisputed that Woodrow Edmonds made no representations to Defendants regarding payments on the note or the as-

signment of the deed of trust although the assignment and the release were recorded.

▮ Plaintiffs did not claim any facts concerning a direct representation but instead rely upon a concealment. To recover under a concealment theory, Plaintiffs must show that Defendants had a duty to disclose information to Plaintiffs. This duty can be shown by the existence of unequal positions, as in a relationship of trust from confidential relationship or some demonstrably superior knowledge on the part of one party that is not within the fair and reasonable reach of the other. *Van Booven v. Smull,* 938 S.W.2d 324, 328 (Mo.App. W.D.1997). A plaintiff seeking to recover for fraudulent concealment must show all of the following: (1) the fact was not within the fair and reasonable reach of the plaintiff; (2) the plaintiff was unable to discover the concealed information; and (3) plaintiff exercised reasonable diligence. *Keefhaver v. Kimbrell,* 58 S.W.3d 54, 60 (Mo.App. W.D.2001).

Although Plaintiffs claim concealment of a plan to recover the seventy-seven acres, Plaintiffs never explain in their argument what duty Defendants had to Plaintiffs to disclose the plan to them. They do not claim, nor could they claim, a confidential relationship between the parties when Plaintiffs purchased the property at a trustee's sale. Likewise, they completely failed in their attempt to prove they did not have the access to the information that the note had been assigned to Defendants.

At trial, Defendants offered evidence of the original deed of trust entered into by Defendants, the warranty deed entered into by the Defendants and Earl Carroll, the deed of trust entered into by Woodrow Edmonds and Earl Carroll, the trustee's deed of sale arising from the default of

Earl Carroll, and the assignment of note and deed of trust that was assigned to Defendants. Each of these documents was properly recorded in the McDonald County Recorder of Deeds office. In fact, Plaintiffs admitted at trial that the record of Defendants' purchase of the Federal Land Bank note and deed of trust was reasonably within their reach and they could have discovered it. Instead, they rely on their inability to ascertain Defendants' "plan" to reclaim the seventy-seven acres to support their claim that Defendants had superior knowledge to Plaintiffs. They further rely on the fact that after Woodrow Edmonds died, Defendants did not respond to a letter sent by Plaintiffs' attorney to ascertain the status of the lien on their property. Plaintiffs' reliance is misplaced.

▮ An alleged "plot" to regain their property cannot create a duty from Defendants to Plaintiffs. To prevail, Plaintiffs must have shown some confidential or contractual relationship between Plaintiffs and Defendants or some information that was not within the fair and reasonable reach of Defendants.[4] The court correctly found, as a matter of law, no contractual relationship existed between Plaintiffs and Defendants, and further that Defendants owed no fiduciary duty to Plaintiffs. Keeping in mind that Plaintiffs purchased the property at a trustee's sale, and not from a warranty deed, that Plaintiffs purchased the property fully aware of the deed of trust, and that all of the records indicating the assignment were discoverable by Plaintiffs, the trial court did not err in its findings of fact and in its ultimate conclusion that Plaintiffs failed to prove their claim of fraud. Point I is denied.

---

4. We do not reach the remaining elements of fraud, but we have serious doubts that reliance on a fact that a debtor normally pays his debts creates any reasonable reliance.

■ Next, Plaintiffs claim the trial court erred as a matter of law in its findings of fact that Defendants' foreclosure on the assigned note was not barred by laches. Although Plaintiffs explain the equitable doctrine of laches, they fail to indicate how laches applies to this legal remedy of foreclosure brought by the holder of an assigned note brought well within the statute of limitations. "Equity may not be invoked to destroy an existing legal right." *Place v. P.M. Place Stores Co.*, 950 S.W.2d 862, 866 (Mo.App. W.D.1996). Furthermore, the general rule is that laches will not bar the assertion of a claim when the statute of limitations pertaining to that claim has not run. *Hughes v. Neely*, 332 S.W.2d 1, 6 (Mo.1960); *Empiregas, Inc. of Palmyra v. Zinn*, 833 S.W.2d 449, 451 (Mo.App. E.D.1992).

■ Plaintiffs' use of laches is unwarranted here as Defendants have not threatened to foreclose on the seventy-seven acre tract of land. "[L]aches is purely a creation of equity, and is only to be invoked by the *defendant* in a case where the plaintiff appeals to equity and seeks the enforcement of an equitable right." *Kellogg v. Moore*, 271 Mo. 189, 196 S.W. 15, 16 (Mo.1917) (emphasis added). In fact, as noted by the trial court, Plaintiffs may still bar foreclosure of the seventy-seven acre tract by satisfying the note evidenced by the Federal Land Bank deed of trust. Plaintiffs claim that Defendants' claim for foreclosure was stale in that Defendants could have foreclosed in 1994 when the first payment was not made. As between Plaintiffs and Defendants, who are the assignees of a deed of trust in which Plaintiffs were not parties, we do not find any exception to the general rule that laches does not bar the legal remedy. Point II is denied.

■ Finally, Plaintiffs claim the trial court erred as a matter of law in its findings of fact because Plaintiffs proved by a preponderance of evidence that Defendants should be barred from asserting their remedy of foreclosure as a result of the doctrine of equitable estoppel. Plaintiffs' argument under this point mirrors their argument in Point II, that it would be unfair to permit Defendants to assert rights belatedly because Plaintiffs had become disadvantaged by the changed conditions. To support a claim of estoppel, a representation must be made by the party estopped and relied upon by another party, who changes his position to his detriment. *Bass v. Rounds*, 811 S.W.2d 775, 779 (Mo.App. E.D.1991). The representation may be manifested by affirmative conduct, either words or acts, or by silence amounting to concealment of material facts. *Id.* In addition, the petitioning party must show these facts were known to the party estopped, and unknown to the other party. *Id.* While a court of equity can grant relief, relief will be barred if the party asserting estoppel had within its reach the means of ascertaining the true state of facts and neglects to utilize those opportunities for information. *Cozart v. Mazda Distributors, Inc.*, 861 S.W.2d 347, 352–53 (Mo.App. S.D.1993).

As noted earlier, no affirmative conduct occurred amounting to a representation made by Defendants to Plaintiffs, thus, Plaintiffs must show concealment of material facts, which presupposes a duty on the part of Plaintiffs. No relationship existed between Plaintiffs and Defendants and no facts mandate a duty. Furthermore, Plaintiffs did not produce evidence demonstrating they changed their position in any way. Plaintiffs admitted that they would have made all of the improvements even if they had known that the note had been assigned. Even if Plaintiffs would not have made the improvements to the property, they did not change their position

regarding a foreclosure. Plaintiffs do not claim they would have made the payments on the deed of trust had they known of the nonpayment of the loan; they only claim they lost the opportunity to do so.

Finally, under the facts of this case, we find no reason to invoke the equitable principles of estoppel in the legal action for foreclosure. Plaintiffs purchased land at a foreclosure sale for a price reflecting the purchase of forty acres with no liens and seventy-seven acres with a substantial lien of $89,368.60. Plaintiffs made an informed choice, knowing that a deed of trust existed on the seventy-seven acres that was at risk of foreclosure if the lien was not paid. There was no evidence indicating any detriment to Plaintiffs. Plaintiffs had no right to rely on the belief that Woodrow Edmonds would pay the lien. Plaintiffs could have negotiated with Woodrow Edmonds to pay a fair value for the one hundred seventeen acres; however, they chose to gamble that the payments were being made and used the seventy-seven acres as their own for ten years. The doctrine of equitable estoppel is inapplicable. Point III is denied.

The judgment is affirmed.

PREWITT, P.J., and PARRISH, J., concur.