# IN THE COURT OF APPEALS OF TENNESSEE,
## AT KNOXVILLE

**FILED**

**May 28, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

_____

|  |  |  |
|---|---|---|
| **WAYNE MILLER and** | ) | Hamblen County Circuit Court |
| **ELIZABETH ANN MILLER**, | ) | No. 96-CV-117 |
|  | ) |  |
|    Plaintiffs/Appellants. | ) |  |
|  | ) |  |
| VS. | ) | C.A. No. 03A01-9709-CV-00411 |
|  | ) |  |
| **DAVID WILLBANKS, M.D.,** | ) |  |
| **HAMBLEN PEDIATRIC** | ) |  |
| **ASSOCIATES, INC. and** | ) |  |
| **MORRISTOWN-HAMBLEN** | ) |  |
| **HOSPITAL ASSOCIATION**, | ) |  |
|  | ) |  |
|    Defendants/Appellees. | ) |  |
|  | ) |  |

_____

From the Circuit Court of Hamblen County at Morristown.
**Honorable John K. Wilson, Judge**

**Judy McCarthy**, Knoxville, Tennessee
**Dennis M. McCarthy**, Knoxville, Tennessee
Attorneys for Plaintiffs/Appellants.


**Douglas L. Dutton**, Knoxville, Tennessee
**Amy V. Hollars**, Knoxville, Tennessee
Attorneys for Defendants/Appellees David Willbanks, M.D. and Hamblen Pediatric Associates,
P.C.


**R. Franklin Norton**, Knoxville, Tennessee
**Gary G. Spangler**, Knoxville, Tennessee
Attorneys for Defendant/Appellee Morristown-Hamblen Hospital Association


OPINION FILED:

**AFFIRMED AND REMANDED**


**FARMER, J.**

**CRAWFORD, P.J., W.S.**: (Concurs)
**LILLARD, J.**: (Concurs)

Plaintiffs Wayne and Elizabeth Ann Miller appeal the trial court's summary judgment which dismissed the Millers' claims for outrageous conduct and negligent infliction of emotional distress against Defendants/Appellees David Willbanks, M.D., Hamblen Pediatric Associates, Inc., and Morristown-Hamblen Hospital Association. We affirm the trial court's judgment based on our conclusion that, even when viewed in the light most favorable to the Millers, the evidence fails to support a cause of action for these claims against the Defendants.

## I. Procedural History

This lawsuit began when the Millers sued Dr. Willbanks, Hamblen Pediatric Associates, and the Hospital for the torts of (1) outrageous conduct, (2) defamation, (3) negligent infliction of emotional distress, and (4) invasion of privacy. The gravamen of the Millers' complaint was that Dr. Willbanks, who worked for Hamblen Pediatric Associates and treated patients at the Hospital, erroneously diagnosed the Millers' newborn daughter as suffering from Drug Withdrawal Syndrome, wrongfully accused Mrs. Miller of using drugs during her pregnancy, and persisted in his accusations of drug use even after receiving negative drug screens for both the infant and Mrs. Miller.

After the Millers filed their complaint, the Defendants moved for summary judgment, contending that the record did not support the Millers' claims against the Defendants and, alternatively, that the Defendants were immune from suit under Tennessee law. All three Defendants claimed immunity pursuant to a Tennessee statute which requires certain persons to report suspected child abuse to specified governmental officials (hereinafter, "Mandatory Child Abuse Reporting Statute").[1] The Hospital additionally claimed immunity pursuant to the Tennessee Governmental Tort Liability Act (GTLA).[2] The trial court subsequently granted the Defendants' respective motions for summary judgment. In successive orders, the trial court dismissed the Millers' claim for outrageous conduct and ruled that all Defendants were immune from suit, Dr. Willbanks and Hamblen Pediatric Associates pursuant to the Mandatory Child Abuse Reporting Statute and the

---

[1]T.C.A. §§ 37-1-401 to -414 (1991 & Supp. 1995).

[2]T.C.A. §§ 29-20-101 to -407 (1980 & Supp. 1995).

Hospital pursuant to the GTLA.

On appeal, the Millers contend that the trial court erred (1) in ruling that Dr. Willbanks and Hamblen Pediatric Associates were entitled to immunity pursuant to the Mandatory Child Abuse Reporting Statute, (2) in ruling that the Hospital was immune from suit under the GTLA, and (3) in dismissing the Millers' claim for outrageous conduct based on the lack of evidence to support this claim. The Millers have chosen not to appeal the trial court's dismissal of their claims for defamation and invasion of privacy. Accordingly, this appeal requires us to address only the propriety of the trial court's dismissal of the Millers' claims for outrageous conduct and negligent infliction of emotional distress.

Summary judgment is appropriate only when the parties' "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." T.R.C.P. 56.04. In determining whether or not a genuine issue of material fact exists for purposes of summary judgment, the trial court is required to consider the question in the same manner as a motion for directed verdict made at the close of the plaintiff's proof. *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). That is, the trial court, and this court on appeal, "must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Id*. at 210-11.

## II. Facts

In light of the foregoing standard, we accept as true the Millers' version of events as attested to in the affidavits submitted by them in opposition to the Defendants' motions for summary judgment. These affidavits reveal that the Millers' daughter, Heather Nicole Miller, was delivered by caesarian section at the Hospital on September 19, 1995. Mrs. Miller apparently was discharged before Heather, and she and Mr. Miller returned home. In the early morning hours of September 21, 1995, the Millers were awakened by Mr. Miller's father with a message from the Hospital. Mr. Miller immediately contacted the Hospital and spoke with Dr. Willbanks.

During their conversation, Dr. Willbanks informed Mr. Miller that Heather was "in distress," but Dr. Willbanks refused to elaborate despite Mr. Miller's repeated questioning, other than to say that Heather had some type of illness, possibly sepsis. Dr. Willbanks told Mr. Miller that he was going to perform a lumbar puncture on Heather, but he refused to explain why, indicating only that it was a necessary procedure. Dr. Willbanks then asked the Millers to be at the Hospital at about 8:30 that morning. When Mr. Miller indicated that the Millers would travel to the Hospital immediately, Dr. Willbanks agreed to wait for them to arrive, but he again refused to provide further explanation over the telephone.

The Millers arrived at the Hospital at about 4:45 a.m., but Dr. Willbanks was not there and had left no message for the Millers. At the Millers' request, a nurse directed them to the nursery, where they observed Heather lying in a crib with an intravenous needle protruding from her scalp. None of the Hospital staff would answer the Millers' questions, so the Millers waited for Dr. Willbanks.

Dr. Willbanks met with the Millers at about 8:30 a.m. During this meeting, Dr. Willbanks explained that Heather had been crying excessively and had been jittery. He then asked Mrs. Miller whether she took any drugs during her pregnancy. When Mrs. Miller responded by saying that she had taken only an occasional Tylenol, Dr. Willbanks told her that it was important for Heather's health that she tell him honestly whether she had taken any drugs. Despite Mrs. Miller's denials, Dr. Willbanks stated that he did not believe she was telling the truth, that he had seen Drug Withdrawal Syndrome in infants many times, that he was positive Heather was suffering from this syndrome, and that he intended to continue treating Heather for the syndrome. At Dr. Willbanks' request, Mrs. Miller agreed to take a drug test.

About one hour after their meeting with Dr. Willbanks, the Millers were approached by a Hospital social worker, who questioned them concerning their drug use, as well as their backgrounds, their living arrangements, and their other children. This meeting increased the Millers' anxiety because, in addition to being concerned for their daughter's health, they feared that their family might be disrupted or even separated because of Dr. Willbanks' accusations of drug use.

The Millers experienced further embarrassment and humiliation because somehow word spread to patients and visitors that Heather was a "drug baby" going through withdrawal. Specifically, Mr. Miller overheard two unidentified people discussing the "drug baby" on the ward. The Hospital nurses also were cold and rude to the Millers. Later in the day, Mr. Miller's parents arrived, but they left angry at Mrs. Miller because they believed that she was responsible for Heather's medical problems.

Throughout the day, the Millers requested information on the drug tests and on Heather's diagnosis and prognosis, but they received no answer and were told that Dr. Willbanks was unavailable. Finally, at about 8:00 p.m., Mr. Miller demanded to see the head nurse. The head nurse informed the Millers that the drug tests on both Heather and Mrs. Miller had come back negative at 11:00 a.m. and that the Millers could leave.

When the Millers returned to the Hospital on September 22, 1995, Dr. Willbanks still did not meet with them. Instead, Dr. Willbanks' associate, Dr. Toffoletto, informed the Millers that the tests had revealed nothing wrong with Heather and that the medications and treatment being administered for Drug Withdrawal Syndrome were being continued only as a precaution.

Despite the negative drug test results, Dr. Willbanks conveyed his suspicions that Mrs. Miller had used drugs during her pregnancy to the Grainger County Health Department. On September 26, 1995, a social worker and nurse from the Health Department visited the Millers' home, where they interviewed the Millers, inspected their living arrangements, and examined Heather, all over Mr. Miller's objections. The social worker again visited the Millers' home on October 6, 1995. Mr. Miller again objected, and the social worker did not return.

### III. The Millers' Claim for Negligent Infliction of Emotional Distress

In *Camper v. Minor*, 915 S.W.2d 437 (Tenn. 1996), our supreme court adopted the general negligence approach to the tort of negligent infliction of emotional distress. In order to avoid summary judgment under this approach, a plaintiff "must present material evidence as to each of the five elements of general negligence -- duty, breach of duty, injury or loss, causation in fact, and

proximate, or legal, cause." **Camper v. Minor**, 915 S.W.2d at 446. Moreover, the plaintiff must present evidence that he suffered a serious or severe emotional injury, and he must support this claimed injury with expert medical or scientific proof. **Id.**; **accord Bain v. Wells**, 936 S.W.2d 618, 624 (Tenn. 1997). Hurt feelings, trivial upsets, and temporary discomfort do not meet the requirement of serious or severe emotional injury; only those emotional injuries "which disable a reasonable, normally constituted person from coping adequately with the stress are sufficient to form the basis for recovery." **Ramsey v. Beavers**, 931 S.W.2d 527, 532 (Tenn. 1996).

The failure to provide medical or scientific proof of a serious emotional injury was fatal to the plaintiff's claim in **Miller v. Niblack**, 942 S.W.2d 533 (Tenn. App. 1996). In that case, the plaintiff, individually and on behalf of her daughter, filed a negligent infliction of emotional distress claim against the laboratory which erroneously excluded a defendant in an earlier paternity proceeding as the father of the plaintiff's daughter. **Miller v. Niblack**, 942 S.W.2d at 535-56. This court affirmed the trial court's dismissal of the negligent infliction of emotional distress claim based, in part, on the plaintiff's failure to present, by affidavit or otherwise, expert medical or scientific proof regarding the plaintiff's alleged emotional injuries. **Id.** at 542.

In the present case, we likewise conclude that the Millers' failure to present expert medical or scientific proof of their emotional injuries is fatal to their claim for negligent infliction of emotional distress. In a deposition, Mrs. Miller testified that Dr. Willbanks' accusations created tension and hostility between her and Mr. Miller's family and that this stress caused the Millers to separate for four months before reconciling. At one point, Mr. Miller's father even threatened to seek custody of Heather and the Millers' other children. The Millers also suffered humiliation because the Hospital nurses gave them "dirty looks" while Heather was being treated for Drug Withdrawal Syndrome. The Millers failed, however, to substantiate their claims of serious emotional injuries with expert medical or scientific proof. Absent such proof, we conclude that the record contains inadequate evidence to support the element of serious emotional injury which we believe is required by **Camper v. Minor**. **See Miller v. Niblack**, 942 S.W.2d at 542. Accordingly, we affirm the trial court's dismissal of the Millers' claim for negligent infliction of emotional distress.

### IV. The Millers' Claim for Outrageous Conduct

Based on the foregoing analysis, the Millers' claim for outrageous conduct also must fail. Under Tennessee law, the tort of outrageous conduct, also known as intentional infliction of emotional distress, consists of three essential elements: "(1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury." *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997) (citing *Medlin v. Allied Inv. Co.*, 398 S.W.2d 270, 274 (Tenn. 1966)). Thus, the torts of intentional infliction of emotional distress and negligent infliction of emotional distress share a common element: the requirement of a showing of serious mental or emotional injury.

Although the appellate courts of this state apparently have not considered the issue of whether expert medical or scientific proof is necessary to support a claim for intentional infliction of emotional distress, other jurisdictions have considered this issue and have concluded that such proof is required. In *Childs v. Williams*, 825 S.W.2d 4 (Mo. Ct. App. 1992), for example, the Missouri Court of Appeals indicated that:

> To prove a claim for intentional infliction of emotional distress where no physical injury has occurred, it is necessary to show "emotional distress or mental injury" which "must be medically diagnosable and must be of sufficient severity so as to be medically significant." *Bass v. Nooney Co.*, 646 S.W.2d 765, 772-73 (Mo. banc 1982). Expert *medical* testimony is the exclusive means to meet this requirement. *Casey v. Casey*, 736 S.W.2d 69, 72 (Mo. App. E.D. 1987).

*Childs v. Williams*, 825 S.W.2d at 10 (emphasis in original). Similarly, the Supreme Court of Rhode Island recently stated that:

> [W]e require for recovery, . . . along with the vast majority of judicial authority, that psychic as well as physical injury claims must be supported by competent expert medical opinion regarding origin,

existence, and causation. ***See, e.g.***, ***Ondis v. Pion***, 497 A.2d 13, 17 (R.I. 1985).

***Vallinoto v. DiSandro***, 688 A.2d 830, 839 (R.I. 1997).

In imposing the same requirement, the Supreme Court of Pennsylvania gave the following explanation:

> The species of tort created by [Restatement (Second) of Torts] section 46 provides only the most nebulous definition of "outrageous" conduct. This in turn renders the cause of action one which tends to defy principled adjudication. . . .
>
> . . . .
>
> It is basic to tort law that an injury is an element to be proven. Given the advanced state of medical science, it is unwise and unnecessary to permit recovery to be predicated on an inference based on the defendant's "outrageousness" without expert medical confirmation that the plaintiff actually suffered the claimed distress. Moreover, the requirement of some objective proof of severe emotional distress will not present an unsurmountable obstacle to recovery. Those truly damaged should have little difficulty in procuring reliable testimony as to the nature and extent of their injuries. We therefore conclude that . . . existence of the alleged emotional distress must be supported by competent medical evidence.

***Kazatsky v. King David Mem'l Park, Inc.***, 527 A.2d 988, 993-95 (Pa. 1987) (footnote omitted).

### *V. Conclusion*

In accordance with the foregoing authorities, we hold that the Millers' failure to present expert medical or scientific proof of their alleged serious emotional injuries is fatal not only to their claim for negligent infliction of emotional distress, but also to their claim for intentional infliction of emotional distress (outrageous conduct). In light of our disposition of this appeal, we need not review the correctness of the trial court's ruling that Dr. Willbanks and Hamblen Pediatric Associates were immune from suit under the Mandatory Child Abuse Reporting Statute or that the Hospital was immune pursuant to the GTLA.

The trial court's judgment is affirmed. Costs of this appeal are taxed to Appellants,

for which execution may issue if necessary.

                                        _____

                                        FARMER, J.

_____

CRAWFORD, P.J., W.S. (Concurs)

_____

LILLARD, J. (Concurs)