## MARY J. KELLOGG et al. v. LOUISE C. MOORE, Appellant.

### Division One, June 1, 1917.

1. **TAX SUIT: Brought After Defendant's Death.** If the defendant in a tax suit was dead at the time of attempted service of process, whether by publication or otherwise, proof of such fact renders the judgment void; and such proof can be made in a collateral proceeding, such as a suit to quiet title, wherein the defendant relies on a sheriff's deed made in pursuance to a sale under said judgment.

2. ———: ———: **Void and Voidable Judgments.** Jurisdiction of both the subject-matter and of the person is required in order to remove a judgment entered against a deceased defendant from the category of void judgments to the category of voidable judgments.

3. **LACHES: Defense Only to Equitable Claim.** Laches is peculiarly a defense to an equitable claim. If plaintiff stands on a legal title, as distinguished from an equitable claim, the doctrine of laches has no place in the case. The defense in such case is the Statute of Limitations.

4. ———: **Estoppel in Pais: Paying Taxes.** There is a difference between laches and estoppel *in pais*. Laches is not a defense to an action based on a legal title. Estoppel *in pais* may be, if the facts are sufficient to defeat the legal title because defendant and his grantors were caused to act to their injury by reason of the conduct of the plaintiff or his ancestor. Knowingly permitting a claimant, in good faith and under a belief of ownership, to make valuable improvements upon land, might amount to estoppel *in pais*, but the mere voluntary payment of taxes by such claimant will not estop the rightful owner.

Appeal from Reynolds Circuit Court.—*Hon. E. M. Dearing*, Judge.

AFFIRMED.

*Leslie C. Green* and *Ernest A. Green* for appellant.

(1) The sheriff's deed for delinquent taxes was effectual to convey the interest of Charles W. Tindall to the defendant's grantor. There being no showing that the suit against Tindall was not instituted during his lifetime.

the deed was effectual to pass title notwithstanding the judgment was rendered after his death. State ex rel. v. Riley, 219 Mo. 687. (2) Even though the court may find that the record title to the premises in controversy is in the plaintiffs, still they should have been precluded and barred from recovering herein by reason of their laches. Moreman v. Talbott, 55 Mo. 397; Rutter v. Carothers, 223 Mo. 640; Shelton v. Horrell, 232 Mo. 376; Toler v. Edwards, 249 Mo. 152.

*Arthur T. Brewster, Sam M. Brewster* and *W. A. Welker* for respondents.

(1) The trial court passed on a square issue of fact and his conclusion is final. Chilton v. Nickey, 261 Mo. 243. (2) The tax title under which defendant claims is absolutely void for the reason that the owner of the land, Charles W. Tindall, died July 11, 1882, and the tax-suit petition was not filed till September 15, 1882. (3) Defendant at the trial made no claim of title under either the ten-year or thirty-year Statute of Limitations. (4) Laches can be relied upon only in bar of the claim for some equitable relief. Plaintiffs stood upon their legal title, hence the doctrine of laches does not apply. Chilton v. Nickey, 261 Mo. 243; Haarstick v. Gabriel, 200 Mo. 243; Hays v. Schall, 229 Mo. 124; Bush v. Stanley, 122 Ill. 406; 1 Am. & Eng. Ency. Pl. & Pr., p. 880.

GRAVES, J.—Action to quiet title to a half section of land in Reynolds County. Petition in usual form under Section 2535, Revised Statutes 1909. The answer is (1) general denial, (2) the ten-year Statute of Limitations, and (3) an allegation which seems to be double in purpose, in that in a portion thereof it would appear that the thirty-year Statute of Limitations was invoked by the allegations made, but in the other portion an invocation of the doctrine of laches. Reply a general denial.

The plaintiffs are the widow and heirs at law of Charles W. Tindall. The said Charles W. Tindall acquired title to this land in July, 1876. He died July 11, 1882. Defendant claims title through a sheriff's deed following a

sale under a tax judgment rendered against Charles W. Tindall and others on November 25, 1882. The supplemental abstract furnished by defendant, and unchallenged here, shows that this tax suit was not instituted until September 15, 1882, or more than two months after Tindall's death. It is conceded that appellant has whatever title may have passed by the sheriff's sale, but it is urged that no title of Tindall passed by that sale. It is likewise conceded that plaintiffs have Tindall's title, unless such title has been divested by reason of the sheriff's deed aforesaid, or by reason of the other matters pleaded in the answer. This sufficiently outlines the case.

I. The first proposition is the validity of the judgment against Tindall in the tax proceeding. The record shows that Tindall (the then record owner of the land) died July 11, 1882, and that judgment **Judgment Against Deceased Defendant.** was not rendered until the November term of the court for the year 1882. The supplemental abstract of the record (undenied here) shows the order of publication in that tax proceeding. This order of publication is thus headed:

"Order of Publication."

"Reynolds County Circuit Court, to November Term, A. D. 1882. In Vacation September 15, 1882."

"In the Circuit Court of Reynolds County, November term, 1882. September, 1882."

This shows a vacation order made on September 15, 1882, or more than two months after Tindall's death. But this is not all. In the body of the order we find this recital:

"At this day comes the plaintiff herein, by his attorney, before the clerk of the circuit court in vacation, and files his petition and affidavit, alleging, among other things, that defendants are not residents of the State of Missouri, and, further, that plaintiff verily believes there are persons interested in the lands herein described, whose names and interest of such parties can not be inserted because the same are unknown, and that such interest is derived from the United States of America, and that

none of the aforesaid can be summoned in this action by the ordinary process of law.''

This recital evidences the fact that the petition in this tax proceeding was, in fact, filed on September 15, 1882, which was more than two months after the death of Tindall.

We take it to be the rule of law in this State that, if the court has jurisdiction of the subject-matter, and then acquires jurisdiction of the person by service of process on such person, then the death of such person, after the service of process and before judgment, does not render such judgment void, but makes it only voidable. But on the other hand if the party is dead prior to attempted service of process, proof of such fact renders the judgment void, and such proof can be made in a collateral proceeding. This is the Missouri rule. We had occasion to review the whole field in the case of State ex rel. v. Riley, 219 Mo. l. c. 684. After a review of our case law, 219 Mo. l. c. 687, we then said:

''From all we conclude the right rule to be, *that if the party dies during the pendency of a suit wherein the court by legal process has acquired jurisdiction over both the person and the subject-matter,* but before judgment, and a judgment is rendered against such party so dying, without there being anything of record showing such death, then such judgment is voidable only and not void. But on the other hand if the party was dead at the institution of the suit, and the court for that reason acquired no jurisdiction over the person or subject-matter, then such a judgment is void.''

Prior to the foregoing we had reviewed the cases in this State, and from them we reached the conclusion that the court would have to have both jurisdiction of the subject-matter and the person prior to death in order to put its judgment against a dead person in the category of voidable judgments, rather than void judgments. Jurisdiction of the person is only obtained by service of process. The mere filing of a petition may stay the Statute of Limitations per force of the wording of the statute, but this act alone does not confer jurisdiction of the person. Both

Kellogg v. Moore.

jurisdiction of the subject-matter and of the person is required before the judgment entered against a party then dead will make such judgment voidable, rather than void.

II.   Nor do we think there is substance in the plea of laches.   Plaintiffs relied in their petition upon a legal title.   They made no claim in equity.   Laches is peculiarly a defense to an equitable claim.   We do not always stop to distinguish between laches and estoppel *in pais*.   In Chilton v. Nickey, 261 Mo. l. c. 243, it is said:

Laches.

"Appellant insists that the plaintiff is barred by laches.   The doctrine of laches is only applied to defeat a claim for some equitable relief.   It is no bar to a claim made under a legal title.   It was expressly so held in Hayes v. Schall, 229 Mo. l. c. 124.   In no case in this State has it been held that laches is a bar to a claim made under a legal right as distinguished from an equitable claim or title."

It is doubtful whether the case cited in the quotation, supra, goes to the length that Roy, C., says, yet we are convinced that the rule he announces is the proper one. That is to say that laches is purely a creation of equity, and is only to be invoked by the defendant in a case where the plaintiff appeals to equity, and seeks the enforcement of an equitable right.   Laches in equity is a doctrine which partakes of the nature of the legal statutory limitation, but is not governed, as to time, by such statute.   It may be inequitable to permit the establishment of an equitable right within a time less than the legal defense of the statutory limitations.   Whether one has been guilty of laches in the prosecution of an equitable right is solely upon the facts presented, and the inequitable result which might follow the establishment of a stale claim.   Lapse of time is not the only thing for consideration.   That the doctrine of laches can only be invoked as against a so-called equitable claim is to some extent established by the fact that some courts do not even require a plea of laches by the defendant but will dismiss the bill for want of equity because of the laches.   By appellant we are cited to the case

271 Mo.—13

of Shelton v. Horrell, 232 Mo. l. c. 376. What we said of laches in that case was on the theory that the petition was sufficient in form to constitute a bill in equity. As best we read the books, laches is a defense to be interposed in opposition to a claim in equity and not to a legal claim. In fact the doctrine of laches is founded upon equity maxims. In 10 R. C. L. 395, sec. 142, it is said:

"It is a familiar doctrine that, apart from any question of statutory limitation, courts of equity will discourage laches and delay in the enforcement of rights. The general principle is that nothing can call forth the court of chancery into activity but conscience, good faith, and reasonable diligence. Where these are wanting, the court is passive and does nothing. The doctrine is founded principally on the equity maxims, 'he who seeks equity must do equity,' 'he who comes into equity must come with clean hands,' and 'the laws serve the vigilant, and not those who sleep over their rights,' and is based on considerations of public policy. Its object is in general to exact of the complainant fair dealings with his adversary, and the rule was adopted largely because after great lapse of time, from death of parties, loss of papers, death of witnesses, change of title, intervention of equities, or other causes there is danger of doing injustice, and there can be no longer a safe determination of the controversy." [See also 10 R. C. L. 396-408, secs. 143 to 157, inclusive.]

If the bill in equity discloses laches upon its face it is demurrable in some jurisdictions. In others, disclosure of laches by the evidence, will authorize the dismissal of the plaintiff's bill, although there is no formal plea of laches. The better doctrine is to plead laches. In this case the plaintiff stood on a legal, as distinguished from an equitable claim of title. In such case the doctrine of pure laches has no place. The defense in such cases is the Statute of Limitations, and that was abandoned here by open announcement in the course of the trial.

III. But if the pleadings in this case could be taken to be a plea of *estoppel in pais,* the facts do not support it. There is no proof sufficient to show that the defendant

or her grantor was caused to act to their injury by reason of the conduct of the plaintiffs or their ances-

**Estoppel in Pais.** tors. If one knowingly sits by and permits another to make valuable improvements on land, such person, under given circumstances, might be estopped from claiming title as against the person, who in good faith, and under the belief of ownership, made such improvements. In this record it is not shown that defendant .or her grantors made any such improvements on this wild land, nor is knowledge of such, if made, brought home to plaintiffs. The mere voluntary payment of taxes will not estop the rightful owner from recovering the land. This evidence shows but little more. The case was well tried and the judgment is affirmed. All concur; *Bond, P. J.,* in paragraph 2 and in the result.